568 So.2d 1290 (1990)
SUMMIT CONSULTING, INC., Appellant,
v.
J.J. WALSH CONSTRUCTION, INC., and Joseph G. Rich, Appellees.
No. 89-03114.
District Court of Appeal of Florida, Second District.
October 3, 1990.
Rehearing Denied November 5, 1990.
*1291 Dale Gardner Jacobs of Jacobs & Valentine, P.A., Lakeland, for appellant.
Hank B. Campbell of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellees.
SCHOONOVER, Chief Judge.
The appellant, Summit Consulting, Inc., as administrator of Employers Self Insurers Fund, challenges a final judgment entered in favor of the appellee, Joseph G. Rich. We reverse.
The appellant is the administrator of Employers Self Insurers Fund which provides workers' compensation coverage to its members. During a two year period beginning April 1, 1986, J.J. Walsh Construction, Inc. (Walsh), was a member of the fund. The appellee, Joseph G. Rich, was an officer and the sole stockholder of the corporation. At the end of the first policy year, Walsh owed $98,670.99 in unpaid premiums. In order to have continued coverage available to Walsh, several documents were executed at the commencement of the second year. Another application and agreement for participation in the fund was executed by the corporation. This agreement was signed by Mr. Rich as president of the corporation on a signature line provided for the signature of a corporate officer, partner, or owner. At the end of the agreement, under a paragraph entitled "Continuing Guaranty," Mr. Rich signed the instrument again on a signature line provided for the signature of "(Guarantor, Personally)". His signature was followed by the word "Pres." The guaranty provided in part that: "We the undersigned jointly and severally, personally and unconditionally guarantee payment of any amounts not paid when due by the insured under the foregoing Participation Agreement. The liability of the undersigned shall not be affected by the discharge or release of the indebtedness, liability or obligation of the insured."
J.J. Walsh Construction Inc., Joseph G. Rich, and Employers Self Insurers Fund then entered into an agreement concerning the delinquent premiums. This agreement provided in part that:
EMPLOYERS SELF INSURERS is willing to extend the payment of the delinquent premium and continue coverage provided monthly payments of $4,500.00 are timely made with the balance of principal and interest at ten percent (10%) being due not later than twelve months from the date of this Note secured by the personal obligation of JOSEPH G. RICH.
WALSH and RICH are willing to execute a Promissory Note, copy attached, whereby they, jointly and severally, promise to pay EMPLOYERS SELF INSURERS FUND the aforesaid sum on the aforesaid terms as inducement to EMPLOYERS SELF INSURERS FUND *1292 to continue coverage rather than cancel coverage for nonpayment of premium.
WALSH acknowledges that this Agreement relates only to the insurance period beginning April 1, 1986 and ending March 31, 1987 and that all premiums coming due for any other insurance period, including future periods, will be paid by WALSH upon EMPLOYERS SELF INSURERS FUND's billing.
This agreement was signed as follows:
J.J. WALSH CONSTRUCTION, INC.
BY: /s/ Joe Rich pres.
JOSEPH G. RICH
Its President
1187 S.W. 26th Avenue
Fort Lauderdale, FL 33312
BY: /s/x Joe Rich pres.
JOSEPH G. RICH,
Personally and Individually
The installment promissory note was executed in the same manner and provided in pertinent part: "FOR VALUE RECEIVED, the undersigned, jointly and severally, promise to pay... ."
The appellant subsequently filed suit against the corporation and Mr. Rich. The action against the corporation was stayed when it filed a petition for bankruptcy. Rich answered, filed affirmative defenses, and counterclaimed. Based upon the record before us, it appears that the trial court, without considering Rich's defenses or counterclaim, entered a judgment against the appellant at the close of its case-in-chief. In the final judgment, the trial court found that the instruments in question did not unambiguously point to the personal liability of Mr. Rich. The court found further that Mr. Rich orally advised the appellant on at least two occasions of his refusal to be individually bound or liable and that he reinforced that refusal by indicating his representative capacity after each signature and crossing out the word personally on two of the instruments. The court concluded by finding that the true object and intent of the instruments was to bind the corporation and not Rich individually. This timely appeal followed.
If the trial court had properly considered Mr. Rich's testimony concerning his intention at the time he executed the instruments, we would not be allowed to reweigh the evidence and would, accordingly, affirm. See DSA Group, Inc. v. Gonzalez, 555 So.2d 1234 (Fla. 2d DCA 1989); Tsavaris v. NCNB Nat'l Bank, 497 So.2d 1338 (Fla. 2d DCA 1986). In this case, however, the court erred in admitting that evidence. Although parol evidence is properly admitted to determine the capacity in which a person executes a contract when the contract is ambiguous, Puckett v. Codisco, Inc., 440 So.2d 596 (Fla. 2d DCA 1983), it is not admissible when the contracts, as in this case, are unambiguous. Manufacturers' Leasing, Ltd. v. Florida Dev. & Attractions, Inc., 330 So.2d 171 (Fla. 3d DCA 1976); Steele v. Hallandale, Inc., 125 So.2d 587 (Fla. 2d DCA 1960). If a contract is unambiguous, an entity's responsibility is determined by construction of the contract itself. See Steele.
It is clear that the application for participation in the fund was executed by the corporation through its president, Mr. Rich. It is just as clear that the continuing guaranty was executed by Mr. Rich personally. The guaranty is not long or involved and it is, as in Sabin v. Lowe's, Inc., 404 So.2d 772 (Fla. 5th DCA 1981), obvious that both the guaranty and the designation below the signature line unambiguously personally obligated whoever signed it. The fact that Mr. Rich signed it as president does not alter the plain and obvious meaning and intent expressed in the guaranty. Sabin. To interpret the guaranty as being a corporate guaranty because the word president was added to Mr. Rich's signature would result in the guaranty being meaningless and add nothing to the existing obligation of the corporation. Central Nat'l Bank v. Muskat Corp. Inc., 430 So.2d 957 (Fla. 3d DCA 1983); Roy v. Davidson Equip., Inc., 423 So.2d 496 (Fla. 4th DCA 1982). Contracts must be construed, as far as possible, to give effect to every part thereof. Hughes v. Professional Ins. Corp., 140 So.2d 340 (Fla. 1st DCA 1962).
*1293 The trial court's reliance on Puckett is misplaced. In Puckett, this court determined that a credit application applying for corporate credit and signed by an individual was ambiguous, and therefore, parol evidence should be admitted. In this case, however, the terms of the guaranty itself, as well as the signature line, clearly provided for joint and several liability. See Onderko v. Advanced Auto Ins., Inc., 477 So.2d 1026 (Fla. 2d DCA 1985); Sabin; Muskat; Roy.
Applying these same principles to the other instruments involved, we find that they were also unambiguous and, considering their terms along with the signatures contained on them, lead to the conclusion that Mr. Rich is individually liable to the appellant and that the court erred in allowing parol evidence concerning the intention of the parties. The fact that Mr. Rich added the word president to his signature and struck out personally, leaving the word individually, does not change this result. See Manufacturers' Leasing; Sabin; Muskat.
We, accordingly, reverse and remand for further proceedings consistent herewith.
PARKER and PATTERSON, JJ., concur.