739 So.2d 161 (1999)
Stephen M. NELSON, Appellant/Cross-Appellee,
v.
AMERIQUEST TECHNOLOGIES, INC., Appellee/Cross-Appellant.
No. 98-2751.
District Court of Appeal of Florida, Third District.
August 18, 1999.
*162 Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A. and Clinton S. Payne, Miami; Snell & Wilmer, L.L.P., Stephen M. Nelson, Miami, and Daniel E. Garrison, and Mark O. Morris, Fort Myers, for appellant/cross-appellee.
Levey and Associates and Lewis J. Levey and Allison L. Friedman, for appellee/cross-appellant.
Before GERSTEN, GODERICH, and GREEN, JJ.
GREEN, J.
The appellant, Stephen Nelson, appeals an order denying his motion to dismiss for lack of personal jurisdiction as well as a subsequent adverse final summary judgment entered against him in this action based on a written guaranty. Appellee, AmeriQuest Technologies, Inc. ("AmeriQuest") cross appeals the trial court's award of prejudgment interest at the statutory rate of ten percent (10%) rather than at its invoiced rate of eighteen percent (18%). We affirm both the main and cross appeals for the reasons which follow.
The origin of the commercial dispute between these parties can be traced to February 13, 1995. On that date, D.J. Guntel d/b/a Micro Station or Computer Express ("Micro Station"), a Utah computer retailer, doing business in Texas, executed a dealer application agreement with National Computer Distributors ("N.C.D."), a company based in Hollywood, Florida in which N.C.D. was to supply Micro Station with computer hardware on credit. D.J. Guntel is a wholly-owned subsidiary of TELS Corporation, another Utah company of which Nelson is president and co-shareholder. Nelson is also vice-president of D.J. Guntel and executed N.C.D.'s dealer application on its behalf. In addition, Nelson also executed a personal guaranty contained in N.C.D.'s dealer application which stated in pertinent part that:
* * * *
Should the dealer be a corporation, the undersigned agree that by execution hereof, he, she, or they are personally liable, jointly and severally, with the dealer as guarantor for the payment of all indebtedness or liabilities incurred pursuant to this agreement.
* * * *
Creditor and dealer agree that venue of any action brought to collect past due invoices or statements, or enforce any provision of this agreement shall be Broward or Dade County, Florida.

* * * *
In executing this guaranty, Nelson placed the letters "V.P." next to his signature. After the execution of this dealer application, the undisputed record evidence reveals that N.C.D. merged with AmeriQuest, Inc. to ultimately become appellee, AmeriQuest Technologies, Inc. Thereafter, AmeriQuest continued to supply the computer hardware and extend credit pursuant to the dealer application. Although Nelson was not involved in the purchasing decisions made by Micro Station, he routinely *163 reviewed the company's invoices at payment time.
Nelson testified, without dispute, that the TELS Corporation sold the assets of D.J. Guntel d/b/a Micro Station on or about April 3, 1996, to Jack Beck, who had served as Micro Station's general manager. It is undisputed that Beck thereafter continued to operate Micro Station as the same type business, in the same location and continued to receive supplies from AmeriQuest pursuant to the dealer agreement. No notice was ever given to Ameri-Quest of any change of ownership of Micro Station. Moreover, Nelson never canceled or revoked his personal guaranty contained in the original dealer application. From July 1996 until approximately January 1997 AmeriQuest continued to supply merchandise on credit to Micro Station at its same location. AmeriQuest invoiced Micro Station in six separate invoices, each of which stated that the customer agrees that venue shall be in Dade or Broward County, Florida upon default and contained the following provision:
[I]n the event that payment is not made within the terms of the attached invoice, a service charge of 1.5% per month shall be assessed on the unpaid balance overdue.
Micro Station Corporation issued checks to AmeriQuest for the payment of the invoices but the checks were returned by the bank for insufficient funds. In a letter dated December 4, 1996, AmeriQuest wrote to Nelson and apprised him of this situation and demanded prompt payment. When Nelson failed to respond and/or make payment, AmeriQuest filed this suit against Nelson as guarantor and Micro Station Corporation.
Nelson, a Utah resident appeared in this action and moved to dismiss the complaint on the grounds that the court lacked personal jurisdiction over him. The motion was denied. Thereafter, AmeriQuest was granted final summary judgment against Nelson, but the trial court awarded prejudgment interest at the statutory rate of ten percent (10%) rather than at the eighteen percent (18%) rate prescribed in AmeriQuest's invoices. This appeal and cross-appeal followed.
On the main appeal, Nelson first argues that the trial court erred in denying his motion to dismiss because his contacts with the State of Florida were insufficient for the trial court's exercise of personal jurisdiction over him. He further argues that the final summary judgment in favor of AmeriQuest was error on the grounds that he executed the guaranty as an officer of D.J. Guntel and not in his personal capacity and that the debts of Micro Station Corporation were never guaranteed by him. AmeriQuest cross-appeals the trial court's failure to award it prejudgment interest at the rate contained in its invoices.

I
Nelson maintains that the court lacked in personam jurisdiction over him in this action pursuant to Venetian Salami Co. v. J.S. Parthenais, 554 So.2d 499 (Fla.1989), due to his insufficient contacts with the State of Florida. Specifically, in his verified motion to dismiss, Nelson averred that he is a resident of the State of Utah and has only been physically present in Florida for vacations. He further averred that he does not own any real property or other assets in Florida; conduct business in Florida; or pay taxes of any kind in Florida. Finally, he averred that his signature on the agreement relative to the obligations of Micro Station Corporation was entered in his capacity as vice-president of Micro Station Corporation and not in an individual capacity. In response, an AmeriQuest representative filed an affidavit averring that in addition to the venue provision contained in its dealer application signed by Nelson, each of the six invoices being sued upon required payment to be made at its office in Hollywood, Broward County, Florida and specified that the customer agrees that venue shall be in Dade or Broward County, Florida, U.S.A. Ameri-Quest *164 further averred that the defendants had ordered and purchased numerous items from AmeriQuest's Broward County office and had never objected to the venue provisions contained in the initial dealer application or the six invoices at issue.
We do not labor long over Nelson's jurisdictional argument as we find it to be without merit. The trial court clearly had in personam jurisdiction over Nelson pursuant to section 48.193(1)(g) Florida Statutes (1997)[1] for his alleged breach of the guaranty. That, coupled with the parties' agreement as to venue contained in the dealer application and invoices, fully supported the trial court's exercise of in personam jurisdiction over Nelson. See Armaly v. Practice Management Assocs., Inc., 533 So.2d 920, 922 (Fla. 2d DCA 1988); Jefferson Sav. and Loan Ass'n v. Greenman Group, Inc., 531 So.2d 428, 429 (Fla. 4th DCA 1988); see generally Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 588, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); Manrique v. Fabbri, 493 So.2d 437 (Fla.1986). Nelson should have reasonably anticipated being haled into court in this state for any alleged breach of the guaranty contained in the dealer agreement. See also World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
We similarly find no merit to Nelson's argument that the forum clause contained in the dealer application is inapplicable to him because he executed the guaranty only in his corporate capacity. The express and unambiguous provisions of the guaranty made Nelson individually liable. The fact that Nelson added the letters "V.P." after his signature could not defeat the obvious and clear purpose of the guaranty agreement; that is, to impose individual liability upon him as the signor. See Tampa Bay Econ. Dev. Corp. v. Edman, 598 So.2d 172, 174 (Fla. 2d DCA 1992); Summit Consulting, Inc. v. J.J. Walsh Constr., Inc., 568 So.2d 1290, 1292 (Fla. 2d DCA 1990); Central Nat'l Bank of Miami v. Muskat Corp. of Am., Inc., 430 So.2d 957, 958 (Fla. 3d DCA 1983); Roy v. Davidson Equip., Inc., 423 So.2d 496, 497 (Fla. 4th DCA 1982).

II
Alternatively Nelson argues that even if the guarantee is enforceable against him personally, AmeriQuest has no standing to enforce it as the guarantee was made to N.C.D. and not to AmeriQuest. He further insists that the guarantee was a special guarantee of the debts of D.J. Guntel d/b/a Micro Station, which is not the same entity as Micro Station Corporation.
First, the undisputed record evidence reveals that Nelson's personal guarantee was not assigned to AmeriQuest. Rather, AmeriQuest acquired the rights to the guarantee in the dealer application by virtue of it being the surviving corporation to a merger with N.C.D. See § 607.1106(1)(b) Fla. Stat. (1995); Coulter Corp. v. Leinert, 869 F.Supp. 732, 733 (E.D.Mo.1994) (applying Florida law the court concluded that "the rights and liabilities of merging corporations are retained by the surviving corporation"). Hence, we disagree with Nelson's assertion that AmeriQuest had no standing to enforce the personal guarantee against him.
Nelson's final argument as to his nonliability in this case essentially rests upon his argument that the invoiced amounts being sued upon were incurred by Micro Station Corporation, an entity of which he has no affiliation and which is *165 separate and distinct from D.J. Guntel d/b/a Micro Station. Initially, we note that contrary to this appellate argument, Nelson averred under oath in his affidavit filed in support of his motion to dismiss below, that his signature on the dealer agreement was entered in his "capacity as Vice-President of Micro Station Corporation and not in an individual capacity." Having thus admitted under oath that he is the vice-president of Micro Station Corporation in an effort to secure a dismissal of this cause against him on jurisdictional grounds, he will not now be permitted to disavow this admission in an effort to exculpate himself from liability on the guarantee on another ground. See Fuller v. Palm Auto Plaza, Inc., 683 So.2d 654 (Fla. 4th DCA 1996); Reserve Ins. Co. v. Pollock, 270 So.2d 469 (Fla. 3d DCA 1972).
Notwithstanding Nelson's admission in this regard, however, we conclude that a mere sale or transfer of the assets of an obligor corporation is insufficient to terminate a guarantor's liability, where as here, the guarantor participated in the sale of the obligor's assets and neither informed the obligee of the sale or sought to revoke his personal guarantee. Although we have located no Florida case which squarely addresses this issue, we believe that the more persuasive weight of authority from other jurisdictions supports our conclusion. See Change in Name, Location, Composition, or Structure of Obligor Commercial Enterprise Subsequent to Execution of Guaranty or Surety Agreement as Affecting Liability of Guarantor or Surety to the Obligee, Annotation, 69 A.L.R.3d § 2[a], 12[b] (1976); cf. Sanz v. Prof. Underwriters Ins. Agency, 560 So.2d 1254 (Fla. 3d DCA 1990) (holding that a corporate director and shareholder, who had executed a separate personal guaranty, providing that it would remain in effect until written notice of termination was received, remained liable under the guaranty even after his resignation as director and shareholder where he failed to specifically terminate the guaranty); Frell v. Dumont-Fla., Inc., 114 So.2d 311 (Fla. 3d DCA 1959) (a change in name of the principal debtor partnershipand withdrawal of one of the partners, estopped guarantor from claiming this as a defense where guarantor: (1) participated in name change; (2) participated in the profits of the original debtor after the change, which business both before and after the name change was dependent upon the purchases made under the construing guaranty; and (3) failed to disclaim responsibility under the guaranty until suit). Essentially, we believe that these courts have correctly reasoned, as a matter of law, that the guarantor's participation in the change of ownership structure of the obligor company thereafter estops the guarantor from using the cloak of the new corporate entity to deny liability under the guaranty to the obligee who has no knowledge of the change. Given the undisputed record evidence in this cause, we conclude that summary judgment was appropriately entered in AmeriQuest's favor as a matter of law.
Finally, we address the issue on the cross-appeal. AmeriQuest claims that the trial court erred in awarding it pre-judgment interest pursuant to the statutory rate rather than in accordance with the rate contained in its six invoices being sued upon. We disagree and in accordance with our decision in Celotex Corp. v. Buildex, Inc., 476 So.2d 294 (Fla. 3d DCA 1985), hold that the preprinted interest rate contained in the six invoices, without more, was insufficient for AmeriQuest to be awarded any more prejudgment interest than is permitted by statute.
First of all, section 687.01, Florida Statutes (1995), the controlling interest statute in effect at the time of the issuance of the invoices, provided that:
In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03.
In Celotex, a case that is factually similar to this case, a merchant supplier supplied a merchant buyer with goods on credit. *166 The supplier brought suit after the buyer defaulted on payment for the goods. The supplier sought prejudgment interest at the rate of eighteen percent (18%) pursuant to the terms of the invoices that accompanied the goods. We held that absent proof of a written agreement between the parties for the higher rate of interest, interest accrues at the statutory rate. Id. at 296; see also Wilkinson & Jenkins Contr. Co., Inc. v. Florida Rock Indus., Inc., 475 So.2d 743 (Fla. 2d DCA 1985). We think that our Celotex holding is in harmony with section 687.01's which requires a "special contract" to deviate from the statutory interest rate. See WPB, Ltd. v. Supran, 720 So.2d 1091, 1092 (Fla. 4th DCA 1998) (discussing special contracts). Here, as in Celotex, AmeriQuest presented only its six preprinted invoices in support of its claim to a higher rate of prejudgment interest. AmeriQuest failed to provide any written proof that the parties had agreed to the higher rate. In the absence of a written agreement, the trial court correctly awarded AmeriQuest prejudgment interest pursuant to the rate specified in the statute.
For the foregoing reasons, we affirm both the main and cross appeals.
Affirmed.
NOTES
[1] That statute provides as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
* * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.