829 So.2d 311 (2002)
LABORATORY CORPORATION OF AMERICA, Appellant,
v.
Gerald E. McKOWN, et al., Appellees.
No. 5D01-3656.
District Court of Appeal of Florida, Fifth District.
October 25, 2002.
*312 Mark O. Cooper of O'Neill, Liebman & Cooper, P.A., Orlando, for Appellant.
Stephen D. Spivey, Ocala, for Appellees.
SAWAYA, J.
Laboratory Corporation of America (LabCorp) seeks review of the final judgment rendered by the trial court in favor of Gerald E. McKown in this action brought on a personal guarantee. The trial court found that the written guarantee was ambiguous, thereby necessitating the use of parol evidence to determine the intent of the parties. After hearing this evidence, the trial court concluded that McKown was not personally liable on the guarantee. We reverse.
McKown formed a corporation, Drug Programs Management, Inc. (DPM), which provided management services for various state agency substance abuse recovery programs. If a licensed professional such as a doctor, nurse, dentist, or attorney was found to be abusing alcohol or other drugs, the state licensing agency, through its recovery program, would contact DPM to arrange for a random blood or urine sample to be taken from the professional. The sample would be sent to LabCorp for testing. The professional would pay the entity that collected the sample; the entity would take its fee out and remit the balance to DPM. DPM was thereafter to provide payment to LabCorp.
In practice, however, DPM accepted payment from the collecting entities, but failed to pay LabCorp a substantial portion of the collected monies. LabCorp eventually notified DPM by letter that it was going to cease service to DPM unless a substantial portion of the debt was paid. Receipt of this letter prompted McKown to call LabCorp and request that LabCorp continue its services. McKown and LabCorp agreed that the services would continue if a portion of the debt was paid by a certain date, provided that McKown guarantee payment by that date. Pursuant to this agreement, on March 3rd, McKown wrote the following letter to Neil Spalding, LabCorp's corporate credit officer:
Dear Neil:
As per our recent telephone conversation of this afternoon, I hereby give you my personal guarantee that $250,000.00 will be paid to Laboratory Corporation of America, Inc. on 11 March, 1998.
Further, we are not using this agreement to "buy time to move our accounts to other laboratories." We look forward to resolving these problems at our meeting to be held in Tampa on March 17th or 18th.
Thank you for your help. I remain
Sincerely yours,
/s/
Gerald E. McKown
President
In reliance on this letter, LabCorp continued to provide services to DPM. March 11th came and went without the money being paid to LabCorp. LabCorp went to the scheduled Tampa meeting referenced in the letter, but McKown and DPM failed to appear. Thereafter, LabCorp terminated services to DPM and filed suit against DPM to collect the full amount of the debt. Suit was also filed against McKown individually based on the guarantee contained in the above referenced letter. The case proceeded to trial and commenced with the parties stipulating to a judgment against *313 DPM in an amount in excess of $1 million dollars.[1]
At the conclusion of the trial, the court found the letter was ambiguous because it was written on corporate stationery and signed by McKown as president of DPM. The court concluded that the ambiguity necessitated the taking of parol evidence to interpret the terms of the guarantee. Based on the evidence and testimony, the court held that there never was a meeting of the minds and that McKown had merely agreed to guarantee payment of the corporate debt in his capacity as president of DPM, thus rendering the letter meaningless since DPM owed the debt anyway. The issue we must initially resolve is whether the letter is ambiguous for the reasons stated by the trial court.
When the terms of a written agreement are ambiguous, parol evidence is admissible to explain or clarify the ambiguous terms. Strama v. Union Fid. Life Ins. Co., 793 So.2d 1129 (Fla. 1st DCA 2001). On the other hand, "when the terms and provisions of a contract are unambiguous and complete, parol evidence is not admissible to define or explain them." NCP Lake Power, Inc. v. Florida Power Corp., 781 So.2d 531, 536 (Fla. 5th DCA 2001) (citations omitted). Therefore, if the letter is an unambiguous personal guarantee by McKown to pay a portion of DPM's debt, the evidence and testimony concerning the intent of the parties was erroneously admitted by the trial court and the judgment in favor of McKown must be reversed. See Ross Oil Corp. v. Foshee, 517 So.2d 713 (Fla. 5th DCA 1987), review denied, 528 So.2d 1181 (Fla.1988).
Whether an ambiguity in a written agreement exists is a question of law which appellate courts review pursuant to the de novo standard of review. Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564 (Fla. 1st DCA 2000); see also DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427 (Fla.1990); Board of Trs. of the Internal Improvement Trust Fund v. Lost Tree Vill. Corp., 805 So.2d 22 (Fla. 4th DCA 2001); NCP Lake Power. "In determining whether the trial judge has erred as a matter of law in his construction of the contract, we must be guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further." Automatic Canteen Co. of Am. v. Butler, 177 So.2d 712, 715 (Fla. 3d DCA 1965) (citations omitted).
Simply because the letter was written on corporate stationery and the designation "President" appears over McKown's signature does not necessitate a finding that the guarantee is ambiguous. Florida courts have consistently adhered to the general rule that an individual who executes a guarantee as officer of a corporation by inserting his or her corporate title after their name on the document cannot defeat the purpose of the guarantee when, by its terms, the document contains provisions for individual liability. See Robert C. Malt & Co. v. Carpet World Distribs., Inc., 763 So.2d 508, 510 (Fla. 4th DCA 2000) (stating *314 that personal liability may be imposed "where the contract contains language indicating personal liability or the assumption of personal obligations, despite a signature preceded by a corporate name and the word `by' and followed by descriptio personae.") (citation omitted); Nelson v. Ameriquest Techs., Inc., 739 So.2d 161 (Fla. 3rd DCA 1999); Summit Consulting, Inc. v. J.J. Walsh Constr., Inc., 568 So.2d 1290 (Fla.App.2d Dist.1990); Central Nat'l Bank of Miami v. Muskat Corp. of Am., Inc., 430 So.2d 957 (Fla. 3rd DCA 1983); see also Sabin v. Lowe's of Florida, Inc., 404 So.2d 772, 773 (Fla. 5th DCA 1981) ("The fact that he signed it `as president' should not alter the plain and obvious meaning and intent expressed in the document."). The reason for the general rule is that "[t]o interpret the guaranty as being a corporate guaranty because the word president was added to [the] signature would result in the guaranty being meaningless and add nothing to the existing obligation of the corporation." Summit, 568 So.2d at 1292 (citing Muskat Corp. Inc.; Roy v. Davidson Equip., Inc., 423 So.2d 496 (Fla. 4th DCA 1982)).
Here, the discussion would benefit from replication of the pertinent part of the letter that constitutes McKown's personal guarantee: "I hereby give you my personal guarantee that $250,000.00 will be paid to Laboratory Corporation of America, Inc. on 11 March, 1998." (Emphasis added). This provision is clear, unambiguous and constitutes McKown's personal guarantee to pay the specified sum by the specified date. Neither the fact that he signed the letter with the designation "President" after his name nor the fact that he wrote the guarantee on DPM's letterhead renders the letter ambiguous or alters the plain meaning of the terms and provisions thereof. To conclude that the guarantee is a corporate guarantee would render it a nullity because DPM was already liable for the debt. Such a conclusion would, under the facts of the instant case, lead to an absurd result because "it does not make sense for the corporation to guarantee its own debt." Robert C. Malt & Co., 763 So.2d at 510. Accordingly, we reverse the final judgment entered in favor of McKown and remand this case to the trial court to enter an appropriate judgment in favor of LabCorp.
REVERSED AND REMANDED.
GRIFFIN and PLEUS, JJ., concur.
NOTES
[1] This is not the first appearance the parties have made before this court regarding this debt. In Laboratory Corp. of America v. Professional Recovery Network, 813 So.2d 266 (Fla. 5th DCA 2002), the issue concerned the alleged fraudulent transfer of the assets from DPM to a new corporation formed by McKown, Professional Recovery Network, Inc. (PRN), shortly after McKown defaulted on the guarantee contained in the March 3rd letter. Just as he had formed DPM, McKown was also the sole shareholder, officer and director of PRN. In effect, DPM was left an empty shell with no assets. This court held that summary judgment in favor of PRN was improper because issues of material fact existed that required resolution by trial.