[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12863

_____

D.C. Docket No. 5:12-cv-00266-WTH-TRL

U.S. NUTRACEUTICALS, LLC,
a Florida limited liability corporation,
d.b.a. Valensa International,

Plaintiff-Appellee,

versus

CYANOTECH CORPORATION,
a Nevada corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 30, 2014)

Before WILSON, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

We must decide in this appeal whether a district court erred when it denied a

motion to compel arbitration even though the parties expressly stated that the rules

of the American Arbitration Association governed their arbitration agreement. Cyanotech Corporation, a company that develops natural products made with microalgae, moved to compel arbitration after Valensa, its competitor, sued Cyanotech for tortious interference with contract and breach of a confidentiality agreement. Cyanotech argued that Valensa had to arbitrate, not litigate, those allegations based on arbitration provisions contained in two contracts between the parties. But the district court denied that motion. Because the parties clearly and unmistakably incorporated the rules of the Association into their arbitration provisions, the district court erred when it refused to allow an arbitrator to decide whether their dispute is arbitrable under one of the parties' contracts. *See Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). We reverse and remand for the district court to compel arbitration.

## I.  BACKGROUND

Valensa and Cyanotech entered into two contracts, in which they agreed that Cyanotech would sell a species of algae called *Haematococcus pluvialis* to Valensa. Valensa used that algae to extract an antioxidant compound, astaxanthin, which is a central ingredient of its nutritional supplements. On November 2, 2007, the two entered into the first contract, which was effective through November 2, 2010. Then on November 1, 2010, they entered into the second contract, which was effective through December 31, 2012.

2

Both contracts contained nearly identical confidentiality provisions that forbade either party from disclosing confidential and proprietary information without the other party's consent. But the confidentiality provision in the 2010 contract added an additional provision, which allowed a party to litigate any breach of the confidentiality agreement:

> Each Party to this Agreement recognizes that disclosure of the other Party's confidential and proprietary information may cause irreparable damage to the non-disclosing Party. Unauthorized disclosure of a Party's confidential information shall constitute a material breach of this Agreement and is cause for termination of the Agreement by the non-disclosing Party. The non-disclosing Party may seek all remedies available by law, including injunctive relief, and may pursue any such action in a court of competent jurisdiction . . . .

Both contracts also contained arbitration provisions that required the arbitration of certain disputes under the rules of the Association, but these arbitration provisions differed in one significant respect. The arbitration provision in the 2007 contract mandated the arbitration of any dispute that arose under that contract:

> The parties agree to resolve any dispute, controversy or claim that arises hereunder through good faith discussions and written correspondence, each in good faith attempting to understand the other's position and to resolve the matter amicably. If thereafter, a party at its sole discretion determines that any such dispute cannot thus be resolved, such dispute shall be subject to binding arbitration in Los Angeles, CA under the auspices and rules of the American Arbitration Association by a single arbitrator.

3

But the arbitration provision in the 2010 contract contained a carve-out for any dispute that related to the breach of confidentiality provision:

> The Parties agree to resolve any dispute, controversy or claim that arises hereunder through good faith discussions and written correspondence, each in good faith attempting to understand the other's position and to resolve the matter amicably. If thereafter, a Party at its sole discretion determines that any such dispute cannot be so resolved, the dispute, *other than a dispute relating to breach of the confidentiality provision of this Agreement,* shall be subject to final and binding, arbitration by a single arbitrator in the State of Washington under the auspices and rules of the American Arbitration Association.

At some point after Cyanotech and Valensa executed the first contract, but before executing the second, Valensa initiated another lucrative business relationship with a third company, Mercola. In October 2010, the chief executive officer of Valensa and a principal of Mercola appeared together in YouTube videos that discussed nutritional supplements. That same month, Valensa and Mercola announced a licensing and supply agreement for a health product containing astaxanthin. Valensa then began supplying Mercola with a different astaxanthin product containing another ingredient, perilla, in March 2011.

Cyanotech also had dealings with Mercola. In September 2010, the Vice President of Sales and Marketing at Cyanotech sent an email to Mercola discussing its microalgae products, including astaxanthin. He offered to supply astaxanthin to Mercola and sent "a care package with samples and literature" to Mercola.

In February 2012, Mercola informed Valensa that it planned to end its relationship with Valensa and would instead purchase the astaxanthin product directly from Cyanotech. Mercola explained that Cyanotech offered lower prices, and Valensa now contends that Cyanotech approached Mercola and offered Mercola discounted prices if it purchased directly from Cyanotech. Valensa sent a letter to Cyanotech and requested that Cyanotech cease any business dealings with Mercola. When Cyanotech failed to do so, Valensa sued Cyanotech in federal court.

Valensa's complaint alleged two causes of action against Cyanotech: tortious interference with its business relationship with Mercola and breach of the confidentiality agreement in the 2010 contract. The complaint alleged that Cyanotech interfered with the Valensa-Mercola relationship by coaxing Mercola to buy directly from Cyanotech after Cyantoech revealed confidential information that it had learned during its dealings with Valensa. Although the complaint alleged that Cyanotech and Valensa had a business relationship beginning in 2007, it referenced only the 2010 contract and not the 2007 contract.

Cyanotech moved to compel arbitration, but the district court denied that motion. Cyanotech filed a reply brief supporting its motion to compel arbitration, in which Cyanotech cited our precedent in *Terminix International Co*. But in its order denying the motion to compel arbitration, the district court failed to

5

acknowledge that precedent and reasoned that the carve-out in the 2010 arbitration provision exempted Valensa from arbitrating its dispute.

## II. STANDARD OF REVIEW

We review *de novo* the denial of a motion to compel arbitration by a district court. *Bess v. Check Express*, 294 F.3d 1298, 1302 (11th Cir. 2002).

## III. DISCUSSION

We agree with Cyanotech that the district court should have sent this dispute to arbitration for an arbitrator to decide the question of arbitrability. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit their grievances to arbitration." *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49, 106 S. Ct. 1415, 1418 (1986). "[A]rbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960), and ordinarily, "the question of arbitrability . . . is undeniably an issue for judicial determination[ ] [u]nless the parties clearly and unmistakably provide otherwise . . . ." *AT & T Tech., Inc.*, 475 U.S. at 649, 106 S. Ct. at 1418. But when parties incorporate the rules of the Association into their contract, they "clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause [applies]." *Terminix Int'l Co.*, 432 F.3d at 1332.

6

Valensa attempts to distinguish our decision in *Terminix* by arguing that the arbitration clause in that appeal was a broad provision requiring arbitration of all disputes "arising out of or relating to" the contract, *id.* at 1329 n.1, and here the 2010 arbitration clause contains a carve-out provision for disputes about the breach of the confidentiality provision. Valensa contends that because the arbitration clause in the 2010 contract clearly exempts any claim about breach of confidentiality from arbitration, we would thwart the intent of the parties if we hold that, under *Terminix*, an arbitrator—and not a court—must decide whether such a claim is arbitrable. We disagree.

*Terminix* is dispositive. When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator. *Id*. at 1332. And here, it cannot be "said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" this dispute. *AT & T Tech., Inc.*, 475 U.S. at 650, 106 S. Ct. at 1419 (quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83, 80 S. Ct. at 1353). That is, Cyanotech presented evidence that the alleged wrongdoing began as early as September 2010, during the term of the 2007 contract and not the 2010 contract, which means that the arbitration clause is "susceptible of an interpretation that covers" the dispute. When the district court announced that Valensa could not rely on anything that occurred during the term of the 2007 contract it recognized

that the arbitration clause in the 2007 contract is "susceptible of an interpretation that covers" the dispute. But the district court cannot weigh the evidence to decide which contract governs the dispute or recast the allegations of fact in the complaint to implicate only the 2010 contract.

We need not address in this appeal whether a carve-out provision in a broad arbitration clause removes certain claims from an arbitrator's jurisdiction because Cyanotech did not move to compel arbitration solely under the 2010 contract, which contained the carve-out provision. Cyanotech raises a factual dispute—which contract governs—and the resolution of that question likely determines whether the allegations of Valensa are arbitrable. So here, we need not decide whether the adoption of the Association rules clearly and unmistakably invites an arbitrator to decide questions of arbitrabilility when a contract has a carve-out provision.

When we rule on motions to compel arbitration, we look to "the facts alleged in the . . . complaint." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208 (11th Cir. 2011). But we may ignore the "legal labels" that Valensa assigns to the allegations, *Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 n.21 (11th Cir. 1998), and we are not limited by the way Valensa "couche[s] [its allegations] in various terms and theories of action." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). We look for the "true

8

thrust" of the complaint even if, "[o]n its face[,] . . . [the complaint] would appear to arise from the [2010] contract." *Ivax Corp. v. B. Braun Am., Inc.*, 286 F.3d 1309, 1322 (11th Cir. 2002) (first alteration in original) (citation omitted).

Valensa's complaint alleges causes of action based on the 2010 contract, but its reliance on only the 2010 contract is a legal label. The allegations of fact are the same whether Valensa labels the causes of action as violations of the 2007 contract or the 2010 contract. Although the complaint does not mention the 2007 contract, the facts alleged in the complaint—its "true thrust"—implicate both the 2007 and 2010 contracts. *See Ivax Corp.*, 286 F.3d at 1322. For that reason, the 2007 contract is "susceptible of an interpretation that covers" the dispute. *AT & T Tech., Inc.*, 475 U.S. at 650, 106 S. Ct. at 1419.

Both parties agree that, should we conclude *Terminix* is dispositive of this appeal, we must send their dispute to arbitration in the State of Washington in accordance with the 2010 contract. *See Princess Cruise Lines*, 657 F.3d at 1208 (relying on the allegations in the complaint to decide whether a district court erred when it denied a motion to compel arbitration). We do not send their dispute to the State of Washington "simply because [the parties] referenced [the rules of the Association] somewhere in the [2010 contract]." *See* Dissenting Op. at 24. Instead, we send the dispute to the State of Washington because the parties agree that, if we compel arbitration, we should do so as prescribed in the 2010 contract. We remand

9

for the district court to compel arbitration as prescribed in the 2010 contract, and that arbitrator will determine whether the 2007 or 2010 contract governs this dispute.

## IV. CONCLUSION

We **REVERSE** the denial of the motion to compel arbitration and **REMAND** to the district court to compel arbitration in the State of Washington.

WILSON, Circuit Judge, dissenting:

Arbitration is a matter of contract. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995). Disputes about arbitrability itself are governed by the same general rule. *Id.* The Supreme Court has clarified, however, that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) (emphasis added) (internal quotation marks omitted). The parties here did not agree to arbitrate the arbitrability of the dispute underlying this appeal, and they certainly did not do so "clearly and unmistakably." They also did not agree to arbitrate disputes regarding which of their agreements controls. Because the Majority is compelling arbitration of a dispute the parties did not agree to arbitrate, I respectfully dissent.

## I. Background

In the operative complaint underlying this appeal, Appellee (Valensa) alleged that Appellant (Cyanotech) (1) breached the confidentiality provision of a 2010 agreement between the two parties (2010 Agreement), and (2) used confidential information, in violation of the 2010 Agreement's confidentiality provision, to tortiously interfere with Valensa's business relationship with a third

11

party.  Cyanotech filed a motion to compel arbitration, and while the 2010

Agreement does have an arbitration provision, it also has a carve-out from the

arbitration provision for disputes relating to the confidentiality provision of the

2010 Agreement.[1]  Because Valensa's complaint limited the scope of this dispute

such that it only relates to breach of the confidentiality provision of the 2010

Agreement, the district court concluded that the 2010 Agreement controls, that the

dispute fits within the carve-out, and that arbitration therefore could not be

compelled.

Cyanotech claims that the district court erred in resolving this dispute

pursuant to the 2010 Agreement rather than the parties' 2007 Agreement, in ruling

on the issue of arbitrability rather than submitting that issue to arbitration, and in

concluding that the underlying dispute is not arbitrable.  These are all matters of

contract, *see First Options*, 514 U.S. at 943, 115 S. Ct. at 1924, so we must begin

by determining which of the parties' agreements controls.

## II. The 2010 Agreement Controls

---

[1] The arbitration provision states:

> If [after attempting in good faith to resolve any dispute between the Parties amicably], a Party . . . determines that any such dispute cannot be so resolved, the dispute, *other than a dispute relating to breach of the confidentiality provision of this Agreement*, shall be subject to final and binding arbitration by a single arbitrator . . . under the auspices and rules of the American Arbitration Association [AAA].

(Emphasis added).

Cyanotech argues that this dispute should be governed by the parties' 2007 Agreement because much of the conduct about which Valensa has reason to complain occurred prior to the 2010 Agreement's effective date.  The 2007 Agreement has an arbitration provision similar to the arbitration provision in the 2010 Agreement, except that it has no carve-out.  If the 2007 Agreement controls, the dispute would obviously not fall in the 2010 Agreement's carve-out, and we would likely have to reverse the district court's denial of Cyanotech's motion because the carve-out was the only basis for that decision.[2]

Cyanotech is incorrect, however.  In determining which agreement controls for purposes of ruling on a motion to compel arbitration, we "consider . . . the facts alleged in the . . . complaint." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208 (internal quotation marks omitted).  And the complaint alleges that Cyanotech engaged in wrongful conduct in breach of the *2010 Agreement*. Valensa did not allege a breach of the 2007 Agreement at all and cannot recover for such a breach, so based on the complaint, the district court had no choice but to consider the terms of the 2010 Agreement only.

Assuming it is true, as Cyanotech argues, that much of the conduct about which Valensa has reason to complain actually occurred during the term of the

---

[2] I use the qualifier "likely" to note the possibility, asserted by Valensa, that at least some portions of this dispute do not arise under *either* of the parties' agreements.  I need not address Valensa's assertion here.

13

2007 Agreement, the substance of the complaint would not change in any way. If Cyanotech successfully proves that, contrary to Valensa's complaint, the allegedly wrongful conduct occurred during the term of the 2007 Agreement, then Cyanotech will have disproved Valensa's allegations concerning breach of the 2010 Agreement, giving Cyanotech a victory on the merits. But Cyanotech will not have proved anything about the contents of Valensa's complaint. In other words, whether the conduct in question implicates the 2010 Agreement rather than the 2007 Agreement is, as a consequence of Valensa's complaint, a point that Valensa must prove in order to prevail on the merits. We may question whether Valensa's decision to give Cyanotech an additional defense—i.e., the defense that its conduct, even if wrongful, occurred prior to the 2010 Agreement's effective date—was wise from a strategic perspective, but because Valensa is the proverbial master of its complaint, making that choice was entirely its prerogative. Valensa's decision cannot be undone, nor its complaint rewritten to include allegations Valensa did not mention, either by this court or by Cyanotech in a motion to compel arbitration.

The Majority's confusion on this issue is manifest in its statement that "*Cyanotech* did not move to compel arbitration solely under the 2010 contract." Maj. Op. at 8 (emphasis added). *Princess Cruise Lines* unambiguously states that, when ruling on motions to compel arbitration, we "consider . . . the facts alleged in

14

the . . . *complaint*," not the arguments made in the motion to compel arbitration by the defendant as the Majority would have it.  657 F.3d at 1208 (emphasis added) (internal quotation marks omitted).[3]  Again, by writing its complaint to preclude recovery for breaches of the 2007 Agreement, Valensa may have significantly hindered its ability to succeed on the merits.  But that was Valensa's choice to make.

---

[3] The Majority sidesteps this hiccup by purporting to look to the "true thrust" of the complaint, which, according to the Majority, is a breach of the 2007 Agreement because "the facts alleged in the complaint . . . implicate both the 2007 and 2010 contracts."  Maj. Op. at 8–9. The Majority cites our own precedent to support this point.  *See Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309 (11th Cir. 2002); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434 (11th Cir. 1998); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382 (11th Cir. 1996). However, those cases do not support the Majority's conclusion, and one directly contradicts it. *Industrial Risk Insurers* and *Gregory* instruct courts to look beyond the *legal theories* enumerated in the complaint and determine what kind of *claim* was alleged in the complaint *based on the facts alleged*.  *See* 141 F.3d at 1448 n.21 ("focus[ing] on factual allegations in [the] complaint rather than legal causes of action asserted" to determine whether a complaint alleges an arbitrable contract claim or a non-arbitrable tort or breach-of-warranty claim); 83 F.3d at 384 ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted.  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ('a party may not avoid a contractual arbitration clause merely by casting its complaint in tort' [(internal quotation marks omitted)]).").  *Ivax* holds that, for purposes of determining on what conduct a plaintiff bases its claim, we should look to the complaint, rather than take a party's arguments on appeal at face value.  *See* 286 F.3d at 1321 ("[W]e believe that Ivax's contention that its lawsuit centers on Braun's failure to maintain its books and records properly is belied by the complaint itself, which is more accurately viewed as a disagreement with Braun's ACOI calculation.").

In other words, we look to the factual allegations in the complaint and determine, based on those allegations, under what legal theory the complaint purports to proceed and to what conduct it objects.  Valensa alleged that the 2010 Agreement—and only the 2010 Agreement— was breached.  The question of "which contract governs" "raises a factual dispute."  Maj. Op. at 8.  Therefore, if we were to faithfully apply precedent, we would credit the complaint's factual allegation that only the 2010 Agreement governs the controversy here over Cyanotech's assertions to the contrary.  *See Ivax*, 286 F.3d at 1321.  In any event, it is perfectly clear that the "thrust" of Valensa's complaint is a breach of the 2010 Agreement.  That is necessarily so because Valensa is formally estopped from recovering for anything else.

15

Moreover, the district court astutely recognized that Valensa may later regret its decision to disclaim any ability to recover for a breach of the 2007 Agreement and try to argue that it can recover for such a breach, after all.  To fix Valensa's argument regarding the content of its complaint and to ensure that Cyanotech would not be prejudiced by potential gamesmanship (e.g., Valensa taking one position to avoid arbitration, then contradicting that position to prevail on the merits), the court announced that Valensa's arguments in response to Cyanotech's motion to compel arbitration would function as "an estoppel *in pais* against any future claim, contention, or argument that Cyanotech engaged in any actionable wrongful conduct not involving a breach of the confidentiality provision of the 2010 Agreement, or any actionable wrongful conduct that occurred" before the 2010 Agreement's effective date.  Thus, even if the terms of the original complaint could have been read to permit recovery for conduct arising under the 2007 Agreement, any ambiguity permitting that reading has been definitively eliminated. For purposes of this case, the complaint now only permits recovery for conduct arising under the 2010 Agreement.

It is also important to recall that Valensa, as the plaintiff, always retained the ability to seek leave to redraft its complaint, and the court retained discretion to grant any such request.  *See* Fed. R. Civ. P. 15(a)(2).  Thus, when the court interpreted Valensa's complaint to preclude recovery for conduct that arose under

the 2007 Agreement—by announcing the estoppel *in pais*—Valensa could have

sought to amend its complaint if it wanted to be able to recover for conduct that

arose under the 2007Agreement, or it could have objected before the district court

and cross-appealed that ruling, if necessary.  That Valensa acquiesced in the

district court's decision to definitively interpret the complaint to preclude recovery

for conduct arising under the 2007 Agreement confirms that the district court read

Valensa's complaint exactly as Valensa intended.

Despite this overwhelming evidence that the 2010 Agreement controls, the

Majority appears to rely on the 2007 Agreement's arbitration provision to resolve

this case.  I note that the Majority is not perfectly clear on whether it relied on the

2007 or 2010 Agreement, and indeed, it is internally inconsistent on this point.[4]

To the extent that the Majority opinion compels arbitration based on the terms of

the 2007 Agreement, it does so in violation of *Princess Cruise Lines* and based on

---

[4] The Majority ultimately declines to decide which agreement controls and sends that question to arbitration, Maj. Op. at 9–10, but for preliminary purposes of ruling on the motion to compel arbitration, the Majority necessarily rests its decision on one agreement or the other (or on the conclusion that both agreements compel arbitration) because "arbitration is simply a matter of contract," *First Options*, 514 U.S. at 943, 115 S. Ct. at 1924.  If there is no agreement, there can be no agreement to arbitrate.  By compelling arbitration, then, the Majority is necessarily making a decision that one agreement controls for purposes of ruling on this motion. The Majority takes contradictory positions on which agreement that is.  The Majority's discussion of *AT&T Technologies* relies on the 2007 Agreement.  But the Majority's conclusion that "[w]e remand for the district court to compel arbitration as prescribed *in the 2010 Agreement*," Maj. Op. at 9 (emphasis added), clearly rests on the 2010 Agreement.  To the extent that the Majority relies on the 2010 Agreement, I agree that that agreement controls, but as I will discuss in Part III, I disagree that arbitration of arbitrability can be compelled based on that agreement.  To the extent that the Majority relies on the 2007 Agreement, I disagree that that agreement controls at all, as will be discussed in the remainder of this Part of my dissent.

17

a misapplication of *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986).

The Majority explained that "Cyanotech presented evidence that the alleged wrongdoing began . . . during the term of the 2007 contract and not the 2010 contract, which means that the arbitration clause is 'susceptible of an interpretation that covers' the dispute."  Maj. Op. at 7 (quoting *AT&T Techs.*, 475 U.S. at 650, 106 S. Ct. at 1419).  As the preceding quotation shows, the Majority relies on *AT&T Technologies*'s articulation of the Supreme Court's well-established presumption in favor of arbitration to hold that we must apply the 2007 Agreement (rather than the 2010 Agreement) unless it may "be said with positive assurance that the [2007 Agreement's] arbitration clause is" inapplicable.  Maj. Op. at 7–8.  In other words, the Majority held that because a colorable argument can be made that either agreement controls, and because the 2007 Agreement would clearly compel arbitration, we must therefore resolve all doubts about which agreement controls in favor of the agreement that compels arbitration—the 2007 Agreement.

This conclusion will sow confusion in our case law because it rests on a complete misapplication of *AT&T Technologies*'s presumption in favor of arbitration.  That presumption only applies when interpreting an arbitration provision, for example when defining the scope of such a provision.  The presumption does *not* apply when determining which of two competing agreements

18

controls.  Indeed, the inapplicability of *AT&T Technologies* is contained in the very passage from that case cited by the Majority.  The Majority writes that "the arbitration clause [in the 2007 Agreement] is 'susceptible of an *interpretation* that covers' the dispute."  Maj. Op. at 7 (emphasis added).  That the 2007 Agreement's arbitration clause is broad enough to cover disputes like the ones raised by Valensa does not answer the question of whether the 2007 Agreement controls in the first place.  Instead of asking how broad the 2007 Agreement's arbitration provision is (which triggers *AT&T Technologies*'s presumption), the Majority should be asking whether Valensa's underlying complaint implicated the 2007 Agreement at all.  And we have very recently held that when asking question like which agreement controls in a particular situation, *AT&T Technologies*'s presumption in favor of arbitration does not apply.  *See Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (holding that where the parties disagree about whether a prior agreement containing an arbitration clause has been superseded, "[t]he FAA's presumption is inapplicable in this situation, as courts are to apply the presumption of arbitrability *only* where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand" (internal quotation marks omitted)).  In other words, we must determine which agreement controls before we can possibly construe any ambiguity in the controlling agreement's arbitration provision in favor of arbitration.

The Majority clearly does not believe the relevant question here (i.e., the question of which agreement controls) to be interpretive, and thus by its own framing of the question, it should not be relying on *AT&T Technologies*'s interpretive rule.  The Majority wrote that "Cyanotech raises a *factual dispute—which contract governs*."  Maj. Op. at 8 (emphasis added).  So the Majority applied precedent that is only relevant when answering an interpretative question to resolve what it believed to be a factual dispute.  Really, the Majority is wrong to characterize this either as an interpretive or factual dispute; it is instead a question concerning the content of the complaint, which *Princess Cruise Lines* directs us to consider when ruling on a motion to compel arbitration.  But the important point is that the question of which agreement controls has nothing to do with interpreting an ambiguous arbitration clause.  Therefore, *AT&T Technologies*'s command to interpret arbitration clauses broadly is inapplicable.  *See Dasher*, 745 F.3d at 1115.

As a final note, even if *AT&T Technolgies* applied, the Majority's conclusion would still be incorrect.  Because the district court has estopped Valensa from recovering for damages caused by conduct that would implicate the 2007 Agreement, it may indeed be "said with positive assurance" that the 2007 Agreement's arbitration clause does not cover this dispute because it may be said with positive assurance that the 2007 Agreement does not and cannot control at all.  *AT&T Techs.*, 475 U.S. at 650, 106 S. Ct. at 1419.

20

The district court correctly concluded that the 2010 Agreement controls and looked to that agreement's terms to determine whether arbitration should be compelled. The Majority's reliance on *AT&T Technologies* to look to the 2007 Agreement's terms is misplaced. Because the Majority apparently compels arbitration pursuant to the terms of the 2007 Agreement, I respectfully dissent.

### III. The District Court Properly Denied the Motion to Compel Arbitration Based on the Terms of the 2010 Agreement

Much as the Majority opinion seems to rely on the possibility that the 2007 Agreement controls, the Majority also explicitly compels arbitration based on the 2010 Agreement. *See* Maj. Op. at 9 ("We remand for the district court to compel arbitration *as prescribed in the 2010 contract* . . . ." (emphasis added)).[5] This portion of the Majority's opinion, unlike the portion that relies on the 2007 Agreement, is at least correct about which agreement controls. But the Majority appears to agree with Cyanotech's contention that even if the 2010 Agreement controls, the district court still erred in ruling on the issue of arbitrability rather

---

[5] Save for the Majority's last statement, all indications are that the Majority is compelling arbitration based on the 2007 Agreement's terms. In addition to arguing that the events in question occurred under the 2007 Agreement, *see* Maj. Op. at 7–8—an argument that is pointless unless it is there to suggest that the 2007 Agreement's terms might control—the Majority also stated that we need not address "whether a carve-out provision in a broad arbitration clause removes certain claims from" arbitration. Maj. Op. at 8. Implicitly, the reason we need not address that issue is because the 2007 Agreement, an agreement that has no carve-out, controls. But by asserting that the 2010 Agreement prescribes arbitration of arbitrability in this case, *see* Maj. Op. at 9–10, the Majority has in fact addressed that question. And it has concluded that a carve-out has no impact on questions of arbitrability. That conclusion is flawed in several ways, as this Part of my dissent explains.

21

than submitting that issue to arbitration.  In other words, in submitting this case to arbitration pursuant to the 2010 Agreement, the Majority concludes that the 2010 Agreement's terms require arbitration of the issue of arbitrability.  I disagree.

## A.  The District Court Properly Reached the Question of Arbitrability

As with all matters of arbitration, whether arbitrability itself must be arbitrated is a matter of contract.  *First Options*, 514 U.S. at 943, 115 S. Ct. at 1924.  But the "question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties *clearly and unmistakably provide[d] otherwise*."  *Howsam*, 537 U.S. at 83, 123 S. Ct. at 591 (emphasis added) (internal quotation marks omitted).  Nothing in the 2010 Agreement clearly and unmistakably commits the question of the arbitrability of this dispute to an arbitrator.

The 2010 Agreement contains a broad arbitration provision with a carve-out, stating that disputes between the parties "*other than a dispute relating to breach of the confidentiality provision of this Agreement* shall be subject to final and binding arbitration by a single arbitrator . . . under the auspices and rules of the American Arbitration Association [AAA]."  (Emphasis added).  The district court concluded that the allegations in Valensa's complaint fall in this carve-out, and therefore, the district court denied the motion to compel arbitration.

22

To the extent that the Majority relies on the 2010 Agreement to conclude that the parties clearly and unmistakably agreed to arbitrate questions of arbitrability, it apparently does so based on the 2010 Agreement's reference to AAA Rules. *See* Maj. Op. at 7 (explaining that *Terminix International Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005), is dispositive). AAA Rule 7(a), in turn, states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." So, the Majority apparently reasons, because AAA Rule 7(a) gives arbitrators the authority to decide the issue of arbitrability, and because AAA Rules were referenced somewhere in the 2010 Agreement, arbitrability here should have been decided by an arbitrator pursuant to AAA Rule 7(a).

I disagree with this conclusion for one simple reason: by merely referencing AAA Rules in the 2010 Agreement, the parties did not thereby clearly and unmistakably agree that AAA Rule 7(a) would govern all disputes. Accordingly, there is no reason to enforce AAA Rule 7(a) in all situations. Instead, we should only apply AAA Rule 7(a) when the parties agreed, clearly and unmistakably, that AAA Rules in general would apply.

To be clear, I agree with the Majority that if parties agree that a dispute will be resolved by AAA Rules, then they are bound by AAA Rule 7(a), and thus are

23

bound to arbitrate arbitrability.  This was exactly what we held in *Terminix*, 432 F.3d at 1332 (citing AAA Rule 8(a), now Rule 7(a)).  *Terminix* thus articulated the rather obvious proposition that parties can be bound to resolve disputes pursuant to AAA Rule 7(a) when they explicitly agreed to resolve disputes pursuant to all AAA Rules.  But *Terminix* clearly did not hold that parties can be bound by AAA Rule 7(a) simply because they referenced AAA Rules somewhere in the operative agreement.

Here, we must address the threshold question of whether the parties agreed to resolve this dispute pursuant to AAA Rules at all, and only after concluding that they did so agree can we apply *Terminix*.  At oral argument, Judge Pryor asked, "How is there a preliminary question to arbitrability itself?"  The answer is, we must preliminarily determine *if* the parties formed an agreement concerning the arbitrability of the instant dispute, and if they did, we must determine what that agreement entails.  In *Terminix*, this court held that the parties did form such an agreement, and that agreement entailed following AAA Rules including Rule 7(a) in resolving all disputes between the parties, necessarily including the particular dispute at issue in that case.  432 F.3d at 1332 ("[T]he parties have agreed that the arbitrator will answer this question by providing (in all three of the arbitration clauses at issue) that 'arbitration shall be conducted in accordance with' . . . AAA Rule [7](a) . . . .").

24

The court necessarily determined for itself that the parties agreed to resolve their disputes—all of them—pursuant to AAA Rules, including Rule 7(a), before it applied AAA Rule 7(a).  That the court in *Terminix* did not dwell on the question of whether AAA Rules governed the particular dispute at issue in that case should be no surprise because, by clearly agreeing to resolve *all* disputes pursuant to AAA Rules, the parties had obviously agreed to resolve their particular underlying dispute pursuant to AAA Rules, and thus, AAA Rule 7(a).[6]  The parties executed twenty different contracts, each containing one of three variations of an arbitration clause that stated "any controversy [or all matters in dispute] . . . shall be exclusively" resolved in accordance with AAA Rules.[7]

---

[6] While the court did not dwell on the question, the court did specifically point out that "the parties have agreed that the arbitrator will answer this question . . . *in all three of the arbitration clauses at issue*," *Terminix*, 432 F.3d at 1332 (emphasis added), suggesting that it was important that the parties' agreement extended to *all* disputes.

[7] Each of the parties' twenty separate contracts contained one of the following arbitration agreements:

> ARBITRATION. The Purchaser and Terminix agree that *any controversy* or claim between them arising out of or relating to this agreement shall be settled *exclusively* by arbitration.  Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. . . .

> ARBITRATION. The Purchaser (including anyone claiming through Purchaser) and Terminix agree that *all matters* in dispute between them . . . shall be settled *exclusively* by arbitration.  Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. . . .

> ARBITRATION.  THE PURCHASER AND TERMINIX AGREE THAT *ALL MATTERS* IN DISPUTE BETWEEN THEM, . . . SHALL BE SETTLED *EXCLUSIVELY* BY ARBITRATION.  Such arbitration shall be conducted in

25

Thus, in *Terminix*, the threshold question of whether the parties formed an agreement with regard to who would decide arbitrability in the particular dispute at issue in that case was incredibly easy to answer. That the question was easy to answer in that case does not suggest that it will be easy to answer in all cases, however. Nor does this suggest that we need not answer the question. Indeed, by virtue of holding that the parties must arbitrate arbitrability because they *agreed* to resolve their particular dispute by AAA Rules, *see Terminix*, 432 F.3d at 1332 (stating that "we are able to avoid the usual process [of deciding arbitrability] for a different *reason*: the parties *have agreed* that the arbitrator will answer this question by providing" for arbitration pursuant to AAA Rules, necessarily including Rule 7(a) (emphasis added)), the court itself had necessarily concluded that the parties agreed to resolve their dispute pursuant to AAA Rules. In other words, before proceeding to determine the consequences of agreeing to resolve a dispute by AAA Rules—i.e., that AAA Rule 7(a) applied, giving the issue of arbitrability to the arbitrator—the court had necessarily determined that the parties had agreed to resolve their dispute pursuant to AAA Rules in the first place.

To be faithful to *Terminix*, then, before applying its holding that AAA Rule 7(a) governs whenever AAA Rules govern, we must first determine if the parties

accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. . . .

Br. for Appellant, at *7–9, 2004 WL 4986251, *Terminix*, 432 F.3d 1327.

agreed to resolve *the instant dispute* pursuant to AAA Rules.[8]  Further, we can only apply *Terminix*'s holding if the parties clearly and unmistakably agreed to apply AAA Rules when resolving a particular dispute.  Without such a requirement, our holding would essentially function as an end run around the Supreme Court's rule in *Howsam* that arbitrability is to be decided by an arbitrator only if the parties clearly and unmistakably provided for that result.  *See* 537 U.S. at 83, 123 S. Ct. at 591.  For example, if parties unclearly, vaguely, or ambiguously agreed that a dispute would be resolved by AAA Rules, yet we applied AAA Rule 7(a) based on a broad reading of *Terminix*, then an arbitrator would decide arbitrability even though the parties did not even clearly or unmistakably agree to apply AAA Rules in general, let alone AAA Rule 7(a) specifically.  Such a holding would imply that a vague agreement to a general proposition somehow constitutes a clear and unmistakable agreement to the specific components of that general proposition.  The notion is nonsensical, it is not at all what *Terminix* requires, and it is inconsistent with Supreme Court precedent announced in *Howsam* and *First Options*.

    If anything, however, the Majority's holding that *Terminix* is dispositive even though the 2010 Agreement controls is even less faithful to *Howsam*.  Far

---

[8] I emphasize that the parties must have agreed to be bound by AAA Rules with regard to *this dispute* because, as the Supreme Court has explained, arbitration "is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration."  *First Options*, 514 U.S. at 943, 115 S. Ct. 1924 (emphasis added).  Questions of arbitration are thus dispute-specific.

27

from requiring a clear and unmistakable agreement that their agreement will be resolved pursuant to AAA Rules, the Majority applies AAA Rule 7(a) without requiring any agreement, clear and unmistakable or otherwise, stating that the instant dispute will be resolved pursuant to AAA Rules.  That is because the 2010 Agreement's carve-out not only precludes arbitration of disputes relating to breach of the confidentiality provision, it also precludes application of AAA Rules in resolving disputes relating to breach of the confidentiality provision.[9]  Thus, according to the terms of the 2010 Agreement, if a dispute fits in the carve-out, AAA Rules do not apply.  Yet the Majority applies those rules—actually, only one of them, Rule 7(a)—any way.

Terminix does not compel this result, and Howsam precludes it.  Consistent with Howsam, in Terminix, the parties agreed clearly and unmistakably that AAA Rules would apply, so it only made sense to apply AAA Rule 7(a).  Instead of applying AAA Rule 7(a) only where AAA Rules were clearly agreed to by the parties, the Majority applies AAA Rule 7(a) whenever the parties have referenced AAA Rules somewhere in their agreement.  That rule apparently holds true even if the parties made those rules specifically *inapplicable* in a particular situation, as the parties did here.  Such a rule is entirely inconsistent with Howsam's

---

[9] The 2010 Agreement states that disputes "*other than a dispute relating to breach of the confidentiality provision of this Agreement*, shall be subject to final and binding arbitration by a single arbitrator . . . under the auspices and rules of the American Arbitration Association [AAA]."  Thus, when a dispute falls in the carve-out, there is simply no invitation in this contract to apply AAA Rules, including, of course, AAA Rule 7(a).

requirement that agreements to arbitrate arbitrability must be clear and unmistakable.

At oral argument, Judge Pryor pressed for a meaningful distinction between *Terminix* and this case. Here it is: in *Terminix*, the parties clearly and unmistakably agreed to be bound by AAA Rules in resolving their dispute, but here, the parties did not clearly and unmistakably agree to be bound by AAA Rules in resolving this dispute. Accordingly, unlike in *Terminix*, here there is no basis for applying AAA Rule 7(a). To be sure, the parties here referenced AAA Rules, but they did so only in the course of explaining that those rules would only apply in resolving disputes *other* than disputes like the one at issue here. The distinction between compelling arbitration pursuant to the parties' agreement, as in *Terminix*, as opposed to compelling arbitration against the terms of the parties' agreement, as the Majority is doing here, is outcome determinative under Supreme Court precedent. *See Howsam*, 537 U.S. at 83, 123 S. Ct. at 591; *First Options*, 514 U.S. at 943, 115 S. Ct. at 1924.

The flaw in the Majority's analysis is revealed by one likely outcome of today's holding. The Majority has held that an arbitrator should decide which agreement controls. If the arbitrator abides by *Princess Cruise Lines* and reads the terms of Valensa's complaint, she should conclude that the 2010 Agreement controls. The arbitrator should then conclude, after reading the 2010 Agreement

and comparing it to the complaint, that the dispute here "relat[es] to breach of the confidentiality provision." If the arbitrator reaches that decision, as she should, then the arbitrator will decide that the dispute is not arbitrable because it fits in the 2010 Agreement's carve-out, and this dispute will end up right back in court. Aside from wasting time, that will definitively prove that the Majority compelled arbitration when the parties did not agree to arbitration. This is so because the arbitrator's conclusion that the dispute fits in the 2010 Agreement's carve-out eliminates any contractual basis for compelling arbitration or applying AAA Rules. In short, if the arbitrator correctly applies the law in resolving this case, the arbitrator's decision will prove that the Majority's decision directly violated Supreme Court precedent in *Howsam*, 537 U.S. at 83, 123 S. Ct. at 591.

The Majority's fundamental disregard for the contractual nature of arbitration agreements, *see First Options*, 514 U.S. at 943, 115 S. Ct. at 1924, is tellingly revealed by an exchange at oral argument. In explaining how the Majority's view will put parties like Valensa in a difficult position—they want many disputes to go to arbitration, but they also want a carve-out such that certain disputes never go to arbitration—counsel explained that the carve-out was intended to avoid the exact outcome the Majority is forcing on the parties today. Judge Pryor offered a solution: "Don't sign an arbitration agreement that references the [AAA]'s Rules, and you don't have that problem." This more or less gives away

30

the Majority's position: parties do not have the option to expressly limit the applicability of AAA Rule 7(a). Even if parties state in unmistakably clear language that AAA Rules are only applicable in resolving some disputes and are not applicable in resolving others, the Majority holds that courts are to entirely rewrite those limiting words. If the parties' agreement says, AAA Rules apply when resolving disputes involving X, Y, and Z, but not when resolving disputes involving A, B, and C, the Majority holds that we must rewrite that agreement to say, AAA Rules apply when resolving disputes involving X, Y, and Z, but not when resolving disputes involving A, B, and C, *except that AAA Rule 7(a) always applies even if a dispute involves A, B, or C*. This is another distinction between this case and *Terminix*. To apply AAA Rule 7(a), the Majority has to rewrite the terms of the parties' agreement; to apply AAA Rule 7(a) in *Terminix*, the court simply applied the clear and unmistakable terms the parties wrote for themselves.

At best, this holding ignores *Howsam*'s "clear and unmistakable" requirement by requiring arbitration of arbitrability in cases where intent to arbitrate arbitrability is ambiguous. In many ways, this holding does more and flips *Howsman*'s requirement on its head by essentially requiring parties who reference AAA Rules anywhere in their contract to clearly and unmistakably state that Rule 7(a) will not govern a particular dispute—otherwise, we will apply it even where other AAA Rules are clearly not intended to apply. Worst of all,

today's holding suggests that even clearly and unmistakably stating that AAA Rules do not apply in certain situations will not be enough for us to conclude that AAA Rule 7(a) does not apply in those situations.

Instead of allowing parties to agree to the particular arrangement regarding arbitration that suits them, we are taking one option off the table. If parties want some disputes to be governed by AAA Rules and others to be resolved in court, then parties, after today, are powerless to dictate for themselves who decides the issue of arbitrability. To be sure, the parties can avoid the latter consequence by refraining from even referencing AAA Rules, but even assuming we had authority to limit their options, which we do not based on Supreme Court precedent, why should we? Parties have many reasons for wanting to reference AAA Rules in agreements: AAA is trusted to make sound rules, saving parties the hassle of negotiating rules of arbitration for themselves; sophisticated parties are often familiar with AAA Rules; cross-referencing AAA Rules simplifies contracts; the list goes on. Parties may want those benefits in some situations without having those rules (or one of those rules in particular) applied blindly to all of their disputes. By explaining that arbitration is a matter of contract, the Supreme Court has explained that parties are free to agree to arbitration on terms of their choosing. By explaining that parties cannot avoid application of AAA Rule 7(a) to all of their disputes by any means other than refraining from referencing AAA Rules

32

anywhere in their agreement, the Majority is explaining that, at least on this issue, arbitration is not a matter of contract at all.

## B.  The District Court Correctly Concluded that the Dispute "Relates to Breach of the Confidentiality Provision" of the 2010 Agreement

Having established that the district court properly declined to send the question of arbitrability—i.e., whether Valensa's claims fall in the carve-out of the 2010 Agreement's arbitration provision—to arbitration, I next address whether the district court answered that question correctly when it concluded that the claims do indeed fit within the carve-out.  Valensa's first claim is for breach of the confidentiality provision itself, so there can be no doubt that it falls in the 2010 Agreement's carve-out for claims "relating to breach of the confidentiality provision."

Valensa's second claim is for tortious interference carried out through use of allegedly confidential information.  This, too, falls in the carve-out because it clearly "relates to" a breach of the confidentiality provision, as it is entirely premised on such a breach.  Had the parties intended the carve-out to apply only to actual claims for breach of the confidentiality provision, they would not have used the term "relating to," which expands the scope of the carve-out.[10]

_____

[10] For example, had the parties agreed that "any dispute, other than a dispute that the confidentiality provision of this Agreement was breached, shall be subject to arbitration under AAA rules," Valensa's first claim would fall under the carve-out but its second would not.  By using the words "relating to breach of the confidentiality provision," however, the parties expanded the carve-out's applicability to include Valensa's second claim and claims like it.

33

For what it is worth, this is an example of a situation in which *AT&T Technologies*'s presumption actually applies because here, the district court had to determine whether the scope of the 2010 Agreement's arbitration provision was broad enough to cover this dispute. Accordingly, this is a relatively close question. Ultimately, however, I do not believe the district court erred when it concluded that the words "relating to" are not susceptible of an interpretation that is limited only to claims "for breach of" a particular provision. The former phrase is necessarily broader than the latter, and if any claims other than claims directly asserting breach of the confidentiality provision are included in the 2010 Agreement's carve-out, Valensa's claims are.[11]

## IV. Conclusion

Ultimately, the Majority is wrong for compelling arbitration, regardless of which agreement it relied on in reaching its decision—though for different reasons. To the extent that the Majority relied on the 2007 Agreement, it should not have done so at all because that agreement's terms are not implicated by Valensa's complaint, particularly in light of the fact that Valensa is estopped from recovering for damages caused by conduct that predates the 2010 Agreement. To the extent

---

[11] Further, Valensa makes a compelling argument that its tortious interference claim does not "arise under" the 2010 Agreement at all. Thus, Valensa argues, even if the dispute did not fit in the carve-out, it would still not be arbitrable given that the 2010 Agreement's arbitration provision only covers disputes that "arise under" the agreement. I need not analyze this argument, as I would affirm based on the foregoing, but this argument provides a potential alternative basis for reaching the same conclusion.

34

that the Majority relied on the 2010 Agreement, it relied on the correct agreement but then misapplied *Terminix* in violation of *Howsam*. In short, the 2010 Agreement clearly controls, and arbitration of arbitrability is not clearly and unmistakably agreed to by the terms of that agreement. Thus, the district court properly reached the question of arbitrability. I dissent because the Majority is compelling arbitration of a question that the parties quite simply did not agree to arbitrate.