[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-14527

_____

D. C. Docket No. 04-00574-CV-T-24-MAP

TERMINIX INTERNATIONAL COMPANY, LP,

Plaintiff-Appellant,

versus

PALMER RANCH LIMITED PARTNERSHIP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 16, 2005)**

Before TJOFLAT and KRAVITCH, Circuit Judges, and MILLS[*], District Judge.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

This is another arbitration dispute in which the parties are litigating whether or not they should be litigating. The familiar scenario is that the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another.

Anders v. Hometown Mortgage Servs., 346 F.3d 1024, 1026 (11th Cir. 2003).

The appellee in this case, Palmer Ranch Limited Partnership (Palmer Ranch), originally filed suit against the appellant, Terminix International Company, L.P. (Terminix), and two of its employees in the Circuit Court for Hillsborough County, Florida. The 131-count, 246-page, 937-paragraph state-court complaint accused Terminix of numerous violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq.; criminal racketeering (i.e., Florida RICO), Fla. Stat. § 772.104; criminal false advertising, Fla. Stat. § 817.41; various forms of fraud and negligence, forty different breaches of the "duty of good faith and fair dealing" (counts 47-86), and forty different breaches of contract (counts 90-129). For the purposes of this appeal, it is enough to say that the dispute generally involves Terminix's provision of termite protection services for Palmer Ranch's 31-building apartment complex from 1997 through at least 2002.

Terminix then filed the present action in the United States District Court for

the Middle District of Florida, seeking an order compelling arbitration under § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. Jurisdiction was based on diversity of citizenship. In its answer, Palmer Ranch did not deny that all of its contracts with Terminix included broadly worded arbitration clauses,[1] but it asserted that the federal action should be dismissed or stayed under the Colorado River abstention doctrine. See generally Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). In the alternative, Palmer Ranch contended that the arbitration agreements are unenforceable because they "illegally deprive [Palmer Ranch] of statutory remedies and rights," including punitive damages, treble damages, damages and injunctive and declaratory relief under the FDUTPA, and attorney's fees.[2]

_____

[1] The parties signed twenty separate contracts, each of which contained an arbitration clause. The arbitration clauses come in one of three forms. The first form covers "any controversy or claim between [Terminix and Palmer Ranch] arising out of or relating to [the] agreement." The second and third forms extend to "all matters in dispute between them, including but not limited to any controversy or claim between them arising out of or relating to [the] Agreement, to any wood destroying insect report with respect to the identified property, or to the identified property in any way, whether by virtue of contract, tort or otherwise."

[2] The first form arbitration clause at issue provides that "[i]n no event shall either party be liable to the other for indirect, special or consequential damages or loss of anticipated profits." The second states,

> [T]he arbitrator shall not have the power or authority to hold Terminix responsible for (i) the repair or replacement of any termite damage to the identified property, (ii) loss of anticipated rents and/or profits or loss of quiet enjoyment, (iii) direct, indirect, special, incidental, consequential, exemplary or punitive damages, or (iv) damages or penalties relating to or arising out of any claim alleging any deceptive trade practice. Each party shall be responsible for paying any attorneys' fees,

3

> expert witness fees, and other expenses it incurs on its behalf in connection with the arbitration, plus one half the arbitrator's fee and one half of any expenses incurred by the arbitrator . . . .

The third is substantially similar to the second except that it makes no mention of claims based on deceptive trade practices.

Initially, we note that the arbitration clauses do not mention treble damages or injunctive or declaratory relief. To this extent, Palmer Ranch's arguments are like those the Supreme Court addressed in PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003). There, the plaintiffs argued that the arbitration agreements at issue, which waived "punitive or exemplary damages," were unenforceable because they would prevent the arbitrator from awarding treble damages under Federal RICO. Id. at 405, 123 S. Ct. at 1535. The Court, however, noted that while it had sometimes treated statutory treble damages as punitive, it had in other contexts treated them as remedial. Id. Given its varying treatment of treble damages, "and given the uncertainty surrounding the parties' intent with respect to the contractual term 'punitive,'" the Court concluded that it would be premature for it to address either the validity of a treble-damages waiver or the antecedent question of contract interpretation. Id. at 406-07, 123 S. Ct. at 1535-36. Therefore, it held that the arbitrator should decide in the first instance whether the agreement actually precluded treble damages. Id.

With respect to treble damages, this case is on all fours with PacifiCare, as Florida courts have also treated treble damages as both punitive and remedial. Compare Snyder v. Bell, 746 So. 2d 1096, 1098-99 (Fla. 2d DCA 1999) (holding that treble damages awarded under the civil theft statute are remedial, not punitive), review granted, 760 So. 2d 945 (Fla. 2000), review dismissed, 778 So. 2d 970 (Fla. 2001), with United Pac. Ins. Co. v. Berryhill, 620 So. 2d 1077, 1079 (Fla. 5th DCA 1993) (concluding that treble damages awarded under the federal odometer fraud statute "are punitive and in the nature of fines"); Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc., 534 So. 2d 1187, 1195 (Fla. 4th DCA 1988) (same with respect to treble damages under the civil theft statute); and McArthur Dairy, Inc. v. Original Kielbs, Inc., 481 So. 2d 535, 539-40 (Fla. 3d DCA 1986) (same).

PacifiCare's holding would also clearly apply to Palmer Ranch's argument regarding declaratory and injunctive relief. None of the agreements mentions declaratory or injunctive relief. Although it is true that one agreement does state that the arbitrator may not award "damages or penalties relating to or arising out of any claim alleging any deceptive trade practice," and Palmer Ranch's claims for declaratory and injunctive relief are based on alleged deceptive trade practices, such relief is not generally thought of as "damages or penalties." Moreover, as one Florida court recently observed, "[g]enerally, unless prohibited from doing so, arbitrators have the power to fashion equitable remedies" and that "the rules of the American Arbitration Association . . . permit the arbitrator to award such relief." Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 264 (Fla. 2d DCA 2004). Given that American Arbitration Association rules also govern this case, it seems unlikely that the arbitrator will interpret the parties' agreements to preclude declaratory or injunctive relief.

Additionally, we note that in Florida, as in most jurisdictions, an ambiguous contract term is construed against the drafter. E.g., City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla.

4

The district court denied Terminix's motion to compel arbitration. In its order, the court reasoned that "[t]he current state of the law in this circuit is that an arbitration agreement that contains remedial restrictions and a severability clause is enforceable, but an arbitration agreement that contains remedial restrictions and no severability clause is unenforceable. See Paladino v. Avenet Computer Technologies. Inc., 134 F.3d 1054 (11th Cir. 1998) and Anders v. Hometown Mortgage Services, Inc., 346 F.3d 1024 (11th Cir. 2003)." Terminix Int'l Co. v. Palmer Ranch L.P., 2004 WL 1879965, at *1 (M.D. Fla. Aug. 4, 2004). Because the arbitration agreements at issue here contain remedial restrictions but not severability clauses, the district court held that they were unenforceable. Id.

The district court misread our decisions in Paladino and Anders. Paladino does not hold that any remedial restriction contained in an arbitration agreement is necessarily unenforceable or necessarily renders the agreement null and void in its entirety. And Anders does not hold that any arbitration agreement that contains an unenforceable remedial restriction is completely null and void unless it also contains a severability clause. Ordinarily, when one party challenges the validity

---

2000). This principle applies with particular force where the language was selected to benefit the drafter. E.g., McGhee Interests v. Alexander Nat'l Bank, 135 So. 545, 548 (Fla. 1931). As such, there is no basis for us to assume at this point that the arbitrator will interpret the agreements to preclude the punitive damages and equitable relief that Palmer Ranch seeks.

5

of an arbitration clause on the ground that it contains unenforceable remedial restrictions, the court must first determine whether those remedial restrictions are, in fact, unenforceable—either because they defeat the remedial purpose of another federal statute (as in <u>Paladino</u>) or because they are invalid under generally applicable state contract law.[3]  If all the provisions of the arbitration clause are enforceable, then the court must compel arbitration according to the terms of the agreement.  If, however, some or all of its provisions are not enforceable, then the court must determine whether the unenforceable provisions are severable.  Severability is decided as a matter of state law.  <u>Anders</u>, 346 F.3d at 1032.  If the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement.  The court should deny the motion to compel arbitration only where the invalid terms of the arbitration clause render the entire clause void as a matter of state law.

---

[3] In the context of a challenge to an arbitration agreement that is governed by the FAA, "state law, whether of legislative or judicial origin, is applicable <u>if</u> that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9, 96 L. Ed. 2d 426 (1987).  The FAA preempts state contract law only to the extent that "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue." <u>Id.</u>  This is because FAA § 2, 9 U.S.C. § 2, makes arbitration agreements enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."  In other words, § 2 puts "arbitration agreements 'upon the same footing as other contracts.'" <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 423, 87 S. Ct. 1801, 1816, 18 L. Ed. 2d 1270 (1967) (quoting H.R. Rep. No.96, 68th Cong., 1st Sess. (1924)).

The reason that a challenge such as the one advanced by Palmer Ranch is ordinarily a matter for the court to decide is that it ultimately goes to the validity of the parties' agreement to arbitrate. That is, Palmer Ranch argues that the whole arbitration clause is unenforceable because it contains unenforceable remedial restrictions that are not severable from the remainder. The Supreme Court has recently reaffirmed that the question "whether the parties have a valid arbitration agreement at all" is for the court, not the arbitrator, to decide. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (plurality opinion). This rule makes imminent sense, for in the absence of "clear and unmistakable evidence" that the parties intended the arbitrator to rule on the validity of the arbitration agreement itself, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995) (quoting AT & T Techs., Inc. v. Communications Workers of Amer., 475 U.S. 643, 649, 106 S. Ct. 1415, 1418-19, 89 L. Ed. 2d 648 (1986)) (alterations and quotation marks omitted), the arbitrator would lack authority to invalidate the very contract from which he derives his authority to begin with.

In Anders, we did not follow this usual procedure because the parties' agreement contained an unambiguous severability clause, and state law favored severability clauses. Anders, 346 F.3d at 1031-32. It was thus clear beyond any

7

doubt that the parties' dispute would eventually wind up in arbitration, and the only question was who would decide the validity of the challenged remedial restrictions, the court or the arbitrator. Id. at 1032. In that situation, we did not rule on the validity of the challenged remedial restrictions because there was no longer any question as to "whether the parties [had] a valid arbitration agreement." Bazzle, 539 U.S. at 452, 123 S. Ct. at 2407. Stated differently, because we were "satisfied that the making of the agreement for arbitration . . . [was] not in issue"—i.e., that validity of the arbitration clause was not in question—even if we assumed that the remedial restrictions were invalid, we affirmed the district court's "order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Here, we are able to avoid the usual process for a different reason: the parties have agreed that the arbitrator will answer this question by providing (in all three of the arbitration clauses at issue) that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association" (AAA). AAA Rule 8(a), in turn, provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Am. Arbitration Ass'n, Commercial Arbitration Rules,

8

http://www.adr.org/sp.asp?id=22173#_Toc13029601.  By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid. See, e.g., Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC . . . , Apollo agreed to be bound by Articles 8.3 and 8.4.  These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a prima facie agreement to arbitrate whose continued existence and validity is being questioned."); Citifinancial, Inc. v. Newton, 359 F. Supp. 2d 545, 549-552 (S.D. Miss. 2005); Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc., 2004 WL 2931284, at *4 (N.D. Ill. Dec. 9, 2004) ("The inclusion of the phrase '[t]he arbitration shall be conducted . . . in accordance with the prevailing commercial arbitration rules of [AAA]' . . . is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator."); Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 685 (S.D. Fla.

2001) (holding that an agreement's incorporation by reference of the AAA rules "provide[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"), aff'd on other grounds, 312 F.3d 1349 (11th Cir. 2002);[4] Brake Masters Sys., Inc. v. Gabbay, 78 P.3d 1081, 1087-88 (Ariz. Ct. App. 2003); Dream Theater, Inc. v. Dream Theater, 21 Cal. Rptr. 3d 322, 329-30 (Ct. App. 2004); Morrell & Co. v. Lehr Constr. Corp., 730 N.Y.S. 2d 709 (N.Y. App. Div. 2001). Because the parties have agreed that the arbitrator should decide this ultimate question, there is no reason for us to decide the subsidiary, antecedent questions regarding the validity of the remedial restrictions that Palmer Ranch now challenges. In the ordinary case, we would decide these questions only because they go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator. Here, however, the parties have contracted around that default rule, and it is, therefore, unnecessary for us to reach these issues.[5]

---

[4] In our opinion affirming the district court's decision in Brandon, Jones, we specifically declined to address this issue. 312 F.3d at 1359 n.12.

[5] Terminix did not specifically bring Rule 8(a) to the attention of this court or, so far as we can tell, the district court. In its opening brief on appeal, it did (1) quote the portions of the agreements that incorporate the AAA Commercial Arbitration Rules, (2) argue that an "agreement to arbitrate under the [AAA rules] automatically incorporates such rules" (quoting Else v. Inflight Cinema Int'l, Inc., 465 F. Supp. 1239, 1244 (W.D. Pa. 1979), and (3) specifically cite and discuss a different AAA rule. But the gist of its argument was simply that, as a general proposition, the validity of the remedial restrictions was an issue for the arbitrator to decide. Given that Terminix has at least argued (correctly) that the AAA rules are incorporated as part of the parties' agreement, we conclude that it is appropriate to consider the effect of those rules in their entirety so that the "parties . . . proceed to arbitration in accordance with the terms of the

10

Anders, 346 F.3d at 1033 ("Having decided the issues 'essential to defining the nature of the forum in which a dispute will be decided,' [Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003)] (quotation marks and citation omitted), we should not and will not decide any more.").

For the foregoing reasons, the decision of the district court denying Terminix's motion to compel arbitration and stay the underlying state-court proceedings is reversed, and the case is remanded with instructions to grant that motion and stay these proceedings.

SO ORDERED.

---

agreement," as intended by the FAA.  9 U.S.C. § 4.