[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14415
_____

D.C. Docket No. 0:17-cv-61086-BB


SPIRIT AIRLINES, INC.,
a Delaware Corporation,

                                              Plaintiff - Appellant,

versus

STEVEN MAIZES,
an individual,
VINCENT ANZALONE,
an individual,
LEE TRAYLOR,
an individual,
HOWARD MADENBERG,
an individual,

                                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 15, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and WOOD,[*] District Judge.

MARTIN, Circuit Judge:

This appeal presents the question of whether it is a judge or an arbitrator who must decide if the arbitration agreement between Spirit Airlines, Inc. and members of its $9 Fare Club allows for arbitration of claims brought by a class of claimants. To answer this question, we must, in turn, decide whether the agreement's choice of American Arbitration Association rules, standing alone, is clear and unmistakable evidence that Spirit intended that the arbitrator decide this question. Following the reasoning of Terminix International Co. v. Palmer Ranch Ltd. Partnership, 432 F.3d 1327, 1332 (11th Cir. 2005), we conclude that it is, so the arbitrator will decide. For this reason and a few others we will discuss, we affirm.

## I. Background

On April 12, 2017, Steven Maizes and three other class representatives filed a claim in arbitration against Spirit Airlines, Inc. on behalf of a class of consumers. The claim arose out of Spirit's offer of membership in a club called the "$9 Fare Club," for a yearly membership fee of $59.95. Spirit advertised that club members would "experience the ultimate in cost savings" and could "cancel at any time."

---

[*] Honorable Lisa Wood, United States District Judge for the Southern District of Georgia, sitting by designation.

But the class representatives alleged Spirit broke several promises made in the $9 Fare Club Agreement. The details of these promises, and whether or how they were broken, are not the subject of this appeal.

Soon after, on May 30, Spirit filed suit against the class representatives in federal court in the Southern District of Florida. Spirit's lawsuit sought a declaration that the agreement's arbitration clause does not authorize class arbitration claims. The agreement's arbitration clause states:

> This Agreement and the terms of membership shall be governed and construed in accordance with the laws of the State of Florida without giving effect to the choice of law provisions thereof. Any dispute arising between Members and Spirit will be resolved by submission to arbitration in Broward County, State of Florida in accordance with the rules of the American Arbitration Association then in effect. Notwithstanding the foregoing, nothing in this Agreement is intended or shall be construed to negate or otherwise affect the consumer protection laws of the state in which Members reside.

Shortly after Spirit filed its suit, it asked the District Court to impose a preliminary injunction to stop the arbitration of class claims. The class representatives, in turn, moved to dismiss Spirit's lawsuit, saying subject matter jurisdiction did not exist in federal court. The District Court held a hearing on both motions. During the hearing, Spirit's counsel said he would like to have Spirit's vice president testify "that there was never an intent to arbitrate more than one dispute at a time." Spirit's counsel said that the vice president's testimony would be relevant "[i]f there is an ambiguity as to what's intended" in the agreement.

3

After the hearing, the District Court denied Spirit's request for an injunction and dismissed the case. The District Court ruled that the agreement's choice of AAA rules incorporated Rule 3 of the Supplementary Rules for Class Actions, which designates the arbitrator to decide whether the arbitration agreement permits class arbitration. Because the AAA rules require the arbitrator to decide this question, the court dismissed the case for lack of jurisdiction. This appeal followed.

## II. Standard of Review

"We review de novo the district court's grant of a motion to dismiss and compel arbitration." Bodine v. Cook's Pest Control Inc., 830 F.3d 1320, 1324 (11th Cir. 2016).

## III. Discussion

Arbitrations routinely generate three categories of dispute. First, there are the merits of the disagreement. Second, there is a dispute about whether the parties agreed to arbitrate their disagreement. Third, parties disagree about who gets to decide whether they agreed to arbitrate their differences. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995).

In First Options, the Supreme Court told us how to go about determining whether the parties agreed to have a court or an arbitrator decide whether they agreed to arbitrate the dispute. Id. at 944, 115 S. Ct. at 1924. The Court observed

4

that when parties enter into an arbitration agreement, they "often might not focus" on who should decide whether their agreement to arbitrate extends to a given dispute. Id. at 945, 115 S. Ct. at 1925. With this in mind, the Court directed lower courts to never assume the parties agreed to have an arbitrator decide questions of arbitrability "unless there is clear and unmistakable evidence that they did so." Id. at 944, 115 S. Ct. at 1924 (alterations adopted and quotation omitted).

Here, the parties dispute whether the agreement's choice of AAA arbitration rules amounts to "clear and unmistakable" evidence of the parties' intent to have an arbitrator decide whether the agreement permits class arbitration.[1] Spirit points to opinions from four other circuits to argue that the incorporation of AAA rules, standing alone, is not enough to overcome the First Options presumption. We have concluded to the contrary.

Our court's opinion in Terminix weighs heavily in our consideration. In Terminix, Palmer Ranch sued Terminix in Florida state court. 432 F.3d at 1329. Terminix responded by suing Palmer Ranch in federal court to compel it to

---

[1] Neither this circuit nor the Supreme Court has resolved whether the availability of class arbitration is a question of arbitrability under First Options. See Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2, 133 S. Ct. 2064, 2068 n.2 (2013); S. Commc'ns Servs., Inc. v. Thomas, 720 F.3d 1352, 1358 n.6 (11th Cir. 2013). But see Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 2407 (2003) (plurality opinion) (stating that class arbitrability was not a question of "whether they agreed to arbitrate a matter," but a question of "what kind of arbitration proceeding the parties agreed to" (emphasis removed)). On appeal, the class representatives did not dispute Spirit's argument that the availability of class arbitration is a question of arbitrability. Because the parties agreed this issue is a question of arbitrability, we assume it without deciding the issue.

arbitrate based on agreements between the parties.  Id.  Palmer Ranch responded that the arbitration agreements were not enforceable because they eliminated Palmer Ranch's statutory remedies and rights under Florida's Deceptive and Unfair Trade Practices Act.  Id.  The District Court agreed with Palmer Ranch, held the agreements unenforceable, and denied Terminix's motion to compel arbitration.  Id. at 1329–31.

On appeal, this Court reversed and directed the District Court to grant the motion to compel arbitration.  Id. at 1333.  We observed that Rule 8(a) of the AAA Commercial Arbitration Rules provides that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Id. at 1332 (alteration adopted).  Based on Rule 8(a), Terminix held that the parties' choice of AAA's Commercial Arbitration Rules was clear and unmistakable evidence that they intended an arbitrator to decide whether the arbitration agreements were enforceable.  Id.

The reasoning of Terminix applies here as well.  The parties' agreement plainly chose AAA rules.  Those rules include AAA's Supplementary Rules for Class Arbitrations, which, true to their name, supplement the other AAA rules. [2]

---

[2] AAA maintains a number of industry specific rules like the "Commercial Arbitration Rules and Mediation Procedures," "Consumer Arbitration Rules," "Labor Arbitration Rules," "International Dispute Resolution Procedures," among others.  See Am. Arbitration Ass'n, AAA

Supplementary Rule 3 provides that an arbitrator shall decide whether an arbitration clause permits class arbitration.[3]  According to Terminix, this is clear and unmistakable evidence that the parties chose to have an arbitrator decide whether their agreement provided for class arbitration.[4]  See id.

Spirit argues that we should demand a higher showing for questions of class arbitrability than for other questions of arbitrability.  It says this higher burden is needed because class arbitration dramatically changes what ordinarily goes on in arbitration.  See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 686–

---

Court and Time-Tested Rules & Procedures, https://www.adr.org/active-rules.  The effect of Supplementary Rule 1(a) is to "supplement any other applicable AAA rules."

[3] In full, Supplementary Rule 3 provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

> In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

[4] The Fifth Circuit has adopted a similar approach.  See Robinson v. J & K Admin. Mgmt. Servs., Inc., 817 F.3d 193, 196 (5th Cir. 2016); Reed v. Fla. Metro. Univ., Inc., 681 F.3d 630, 634–35 (5th Cir. 2012), abrogated on other grounds by Oxford Health Plans, 569 U.S. at 568, 133 S. Ct. at 2068.

7

87, 130 S. Ct. 1758, 1776 (2010) (explaining differences between class and bilateral arbitration). Spirit's argument has some authority. Four circuits have held that adoption of the AAA rules is not clear and unmistakable evidence of the parties' intent to have an arbitrator decide whether the agreement allows class arbitration. See Catamaran Corp. v. Towncrest Pharmacy, 864 F.3d 966, 972–73 (8th Cir. 2017); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 762–63 (3d Cir. 2016); Dell Webb Cmtys., Inc. v. Carlson, 817 F.3d 867, 876–77 (4th Cir. 2015); Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 599–600 (6th Cir. 2013).

While we respect the work of our sister circuits, we have read Supreme Court precedent differently. The out-of-circuit cases relied upon by Spirit import the reasoning of Stolt-Nielsen, 559 U.S. at 684, 130 S. Ct. at 1774–75. See Reed Elsevier, 734 F.3d at 599 (citing Stolt-Nielsen, 559 U.S. at 684–85, 130 S. Ct. at 1774–75); Chesapeake Appalachia, 809 F.3d at 760 ("We nevertheless have looked to these 'clause construction' cases [like Stolt-Nielsen] for guidance in answering the 'who decides' question."). In contrast, we read Stolt-Nielsen to address the question of whether an agreement allows class arbitration at all, separate from the issue of who decides the question to begin with. See 559 U.S. at 684, 130 S. Ct. at 1775. We agree with Spirit that these circuits have created a higher burden for showing "clear and unmistakable" evidence for questions of

8

class arbitrability than for ordinary questions of arbitrability.  See, e.g., Catamaran, 864 F.3d at 973 ("The risks incurred by defendants in class arbitration  . . . and the difficulties presented by class arbitration . . . all demand a more particular delegation of the issue than we may otherwise deem sufficient in bilateral disputes.").  However, we find no basis for that higher burden in Supreme Court precedent.[5]

At oral argument, Spirit made a new argument based on the last paragraph of Supplementary Rule 3.  This paragraph says "[i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."  According to Spirit, this paragraph means a court should not consider the existence of the Supplementary Rules when deciding whether the parties empowered the arbitrator to decide the question of class arbitrability.

---

[5] The reasoning of Stolt-Nielsen lends credence to the idea that the availability of class arbitration is not presumptively for courts to decide.  First Options's holding that courts presumably decide questions of arbitrability was based on an empirical claim that parties are not likely to have focused on the "who decides" question when they reached their agreement.  First Options, 514 U.S. at 944–45, 115 S. Ct. at 1924–25.  But it seems to us that if the change from bilateral to class arbitration is as important as Stolt-Nielsen states, 559 U.S. at 686–87, 130 S. Ct. at 1776, then we would expect Spirit to have thought about who it wanted to decide that issue when it drafted the arbitration agreement.  In this way, at least for the question of who decides the availability of class arbitration, Stolt-Nielsen may be at odds with the empirical premise at the heart of First Options's holding.  We need consider this no further, however, because we view Spirit's choice of AAA rules as "clear and unmistakable" evidence that it wanted the arbitrator to decide whether this agreement permits class arbitration.  See Terminix, 432 F.3d at 1332.

9

Again, we understand Spirit's argument to substitute the question of whether a particular agreement permits class arbitration for the different question of whether the agreement delegates the decision on that question to the arbitrator. We read the last paragraph of Supplementary Rule 3 to mean simply that the existence of the Supplementary Rules has no effect on whether the agreement permits class arbitration.

Spirit also argues the agreement's choice of Florida law makes the agreement ambiguous about whether the Florida Arbitration Code or the AAA rules apply. In this regard, we look back at the arbitration clause again, this time with different emphasis:

> This Agreement and the terms of membership <u>shall be governed and construed in accordance with the laws of the State of Florida</u> without giving effect to the choice of law provisions thereof. Any dispute arising between Members and Spirit will be resolved by submission to arbitration in Broward County, State of Florida <u>in accordance with the rules of the American Arbitration Association then in effect</u>. Notwithstanding the foregoing, nothing in this Agreement is intended or shall be construed to negate or otherwise affect the consumer protection laws of the state in which Members reside.

Spirit says the choice of "the laws of the State of Florida" incorporates the Florida Arbitration Code. And Florida's Arbitration Code reserves questions of arbitrability for courts. <u>See</u> Fla. Stat. § 682.02(2). According to Spirit, the ambiguity created by the simultaneous incorporation of the Florida Arbitration

10

Code and the AAA rules means the District Court must decide whether the agreement permits class arbitration.

Yet any perceived ambiguity in Spirit's agreement can be resolved through normal interpretive methods. See City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000) ("[W]e rely upon the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof."). The best interpretation of Spirit's agreement is that Florida law covers the parties' substantive rights and duties while the choice of AAA rules covers dispute resolution procedures. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63–64, 115 S. Ct. 1212, 1219 (1995) (giving an arbitration agreement a similar construction). Thus the agreement is not ambiguous.

Finally, Spirit argues the District Court should be reversed because it did not apply the correct legal standard and instead decided an issue of fact on the motion to dismiss. Somewhat relatedly, Spirit says the District Court erred by not allowing its vice president to testify about Spirit's intent in choosing the AAA rules.

There is no merit to these arguments. The arbitration agreement was attached to Spirit's complaint, was central to the case, and its authenticity was not disputed. It was therefore appropriate for the District Court to consider it in deciding the class representatives' motion to dismiss for lack of subject matter

11

jurisdiction.  See  Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (per curiam); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  And interpretation of the agreement is a question of law, not fact.  See Inetianbor v. CashCall, Inc., 768 F.3d 1346, 1350 (11th Cir. 2014).

Also, by finding the arbitration agreement clearly and unmistakably evidenced the parties' intent to arbitrate the class arbitration question, the District Court implicitly found the agreement is not ambiguous on that issue.  See First Options, 514 U.S. at 944–45, 115 S. Ct. at 1924.  As a result, the District Court was not permitted to rely on testimony from Spirit's vice president to explain the agreement's meaning, and was correct to reject the offer of that testimony.  See, e.g., Lab. Corp. of Am. v. McKown, 829 So. 2d 311, 313 (Fla. 5th DCA 2002) ("[W]hen the terms and provisions of a contract are unambiguous and complete, parol evidence is not admissible to define or explain them." (quotation omitted)).  There was no error in refusing this testimony.

**AFFIRMED.**