GRAHAM, District Judge, concurring in part and dissenting in part:
I agree wholeheartedly with the majority holding that the availability of class arbitration is a question of arbitrability, presumptively for a court to decide, and that courts cannot assume that parties would want these kinds of questions to be arbitrated unless an agreement evinces a clear and unmistakable intent to send them to arbitration. I also agree with the majority's finding that the arbitration agreement in this case expressly and by incorporation of specific rules of the American Arbitration Association (the "AAA") delegated issues of arbitrability to the arbitrator. But I disagree with the majority's conclusion that the language these parties used in their contract expressed a clear intent to permit the arbitrator to decide the question of the availability of class arbitration.
I believe that a general delegation to arbitrate issues of arbitrability is not enough and that without a specific reference to class arbitration the court should presume that the parties did not intend to delegate to an arbitrator an issue of such great consequence.
The arbitration agreement in this case makes no express reference to class arbitration or any other procedure for combining or consolidating multiple claims. It does contain a general delegation of the power to decide matters of arbitrability: "The ability to arbitrate the dispute, claim or controversy shall likewise be determined *945 in the arbitration." And it refers to two specific rules of the AAA-the Arbitration Rules for the Resolution of Consumer Related Disputes and the Commercial Arbitration Rules-each of which includes a general delegation of the power to decide issues of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."
Neither the express delegation clause nor the AAA rules make any reference to class arbitration. In the absence of a reference to class claims it should be presumed that the delegation of the power to determine arbitrability is limited to the arbitrability of bilateral claims and controversies arising out of the contractual relationship between the parties.
In Terminix , this Court construed an arbitration agreement that said, "the arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the [AAA]." Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship , 432 F.3d 1327, 1332 (11th Cir. 2005). Those rules included this provision: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. This Court held that this language was enough to give the arbitrator the authority to determine the validity of the arbitration clause. Id. The case involved a single plaintiff, Palmer Ranch, which claimed that Terminix failed to properly perform termite protection services for its apartment complex. Id. at 1330. Terminix , unlike the present case, involved the authority of the arbitrator to determine his or her jurisdiction to decide the merits of a bilateral dispute arising out of the parties' commercial relationship.
A similar case from this Court likewise involved a dispute between two parties to an arbitration agreement, which provided that almost any dispute that arose between them under their commercial agreement would be arbitrated "under the rules of the [AAA]." U.S. Nutraceuticals, LLC v. Cyanotech Corp. , 769 F.3d 1308, 1309 (11th Cir. 2014). Adhering to its holding in Terminix , the Court held that the arbitrator had the authority to determine arbitrability of that bilateral dispute. 769 F.3d at 1312.
In Spirit Airlines , this Court addressed for the first time the issue of the authority of an arbitrator to decide whether an arbitration agreement permitted class arbitration, finding that the arbitration agreement in that case did confer such authority upon the arbitrator. Spirit Airlines, Inc. v. Maizes , 899 F.3d 1230 (11th Cir. 2018). The arbitration agreement in Spirit Airlines referred in general to "the Rules of the American Arbitration Association." Id. at 1235. The Court in Spirit Airlines relied on one of those sets of rules, to wit, the Supplementary Rules for Class Arbitrations, which include Supplementary Rule 3 which "provides that an arbitrator shall decide whether an arbitration clause permits class arbitration." Id. at 1233.
In contrast, the arbitration agreement in this case refers to two very specific rules of the AAA that will govern the parties' disputes: the "Arbitration Rules for the Resolution of Consumer Related Disputes" and "Commercial Arbitration Rules." Significantly, absent in either of these two sets of rules is any reference to the Supplementary Rules for Class Arbitrations. There is one general reference to the rules of the AAA in JPay's arbitration agreement, but its context is quite unlike the all-inclusive language in Spirit Airlines .
*946 JPay's arbitration agreement says, "The arbitration proceedings shall be conducted in as expedited a manner as is then permitted by the rules of the [AAA]." Any suggestion that this general reference was intended to adopt by reference the Supplemental Rules for Class Arbitration would be absurd-class arbitration could hardly be considered expeditious. The lack of a general reference to the rules of the AAA that could be reasonably construed to reference class arbitration makes JPay's arbitration agreement factually distinguishable from the agreement in Spirit Airlines .
I conclude that none of the Eleventh Circuit cases cited by the majority are controlling here. In Spirit Airlines the Court relied on a specific reference to class arbitration in the AAA Supplemental Rules for Class Arbitrations. Without such specificity, a court should presume that a general delegation of the power to decide questions of arbitrability does not include the power to construe an arbitration agreement to permit class arbitration.
My conclusions are driven by the immense differences between adjudication of bilateral disputes and the conduct of class action proceedings. Other courts, including the Supreme Court of the United States, have enumerated some of these significant differences, including the duration, complexity, inefficiency, and expense of class proceedings, vastly increased potential liability, lack of confidentiality, and limited scope of judicial review.[1]
The majority relies heavily on these considerations in deciding that the availability of class arbitration is a question of arbitrability for a court to decide. But it refuses to consider them when deciding whether the parties in this case intended to let the arbitrator decide if their agreement permits him or her make that call. That is puzzling because that inquiry is an inquiry into the parties' intent and ordinarily a court considers consequences in determining what the parties intended. I believe the court should consider the consequences in deciding whether the parties' general delegation of the authority to decide arbitrability was intended to include the important issue of the arbitrability of class claims. The consequences of transforming a bilateral arbitration into a fundamentally different type of proceeding supports the proposition that the arbitrator's power to do so should not be inferred from a general delegation to decide issues of arbitrability. The principles of Howsam should likewise apply here. See Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court.").[2]
*947 I find some support for my views in several other circuit court decisions. See, e.g. , Catamaran Corp. v. Towncrest Pharmacy , 864 F.3d 966, 973 (8th Cir. 2017) ("The risks incurred by defendants in class arbitration ... and the difficulties presented by class arbitration ... all demand a more particular delegation of the issue than we may otherwise deem sufficient in bilateral disputes."); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC , 809 F.3d 746, 764-65 (3d Cir. 2016) ("Given these considerations, it is conceivable that [the parties] may have agreed to the Leases because they intended to delegate questions of bilateral arbitrability to the arbitrators-as opposed to the distinctive question of whether they thereby agreed to a fundamentally different type of arbitration not originally envisioned by the FAA itself."); Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett , 734 F.3d 594, 599 (6th Cir. 2013) ("But given the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. Thus, at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts.").
I would also note that in Oxford Health the arbitration agreement incorporated the rules of the AAA, and nevertheless at least two of the Justices felt that was not sufficient to authorize the arbitrator to decide whether to conduct class arbitration. See Oxford Health Plans LLC v. Sutter , 569 U.S. 564, 574, 133 S.Ct. 2064, 186 L.Ed.2d 113 (Alito, J., concurring) (joined by Justice Thomas) ("But unlike petitioner, absent members of the plaintiff class never conceded that the contract authorizes the arbitrator to decide whether to conduct class arbitration. It doesn't.").
I would affirm the district court's decision that the arbitration agreement in this case does not permit the arbitrator to decide whether the agreement permits class arbitration.

Another factor a court might want to consider in deciding whether the parties intended to let the arbitrator make the call is the stake the arbitrator has in the outcome. Arbitration is no longer a cottage industry; it is big business. Deborah Rothman, Trends in Arbitrator Compensation , Dispute Resolution Magazine, Spring 2017, at 8 (noting rates for arbitrators may exceed $1,000 an hour), available at https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.authcheckdam.pdf. Arbitrators charge substantial fees and vigorously compete for business. Transforming a simple bilateral dispute into a class action, which may require months or years of full-time work, might tax an arbitrator's impartiality.

The majority also holds that the significance of the delegation clause, "[a]t the absolute least ... would have been obvious to the JPay attorneys who drafted the Terms of Service." Ante at 939. I disagree. The implication here is that the majority would hold ambiguity against the drafters. It's true that many states have adopted the rule of construing ambiguous terms in a contract against the drafter. But our context demands "clear and unmistakable" language, Howsam , 537 U.S. at 83, 123 S.Ct. 588, a standard stood on its head if a court applies the construe-ambiguity-against-the-drafter canon, see Chesapeake Appalachia , 809 F.3d at 763 (refusing to construe ambiguity against the drafter because of the clear-and-unmistakable standard). The Supreme Court is set to resolve this question: "Whether the Federal Arbitration Act forecloses a state-law interpretation of an arbitration agreement that would authorize class arbitration based solely on general language commonly used in arbitration agreements." Lamps Plus, Inc. v. Varela , 2018 WL 389119, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ---- (U.S.) (cert. petition); see Varela v. Lamps Plus, Inc. , 701 F. App'x 670, 673 (9th Cir. 2017), cert. granted, --- U.S. ----, 138 S.Ct. 1697, 200 L.Ed.2d 948 (2018).