[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13442
Non-Argument Calendar
_____

D.C. Docket No. 0:19-cv-62878-KMW


NORTHROP AND JOHNSON YACHTS-SHIPS, INC.,
a Florida Corporation,

                                                    Plaintiff - Appellant,

versus

ROYAL VAN LENT SHIPYARD, B.V.,
a Netherlands Corporation,
FEADSHIP AMERICA, INC.,
a Florida Corporation,

                                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 26, 2021)

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Northrop and Johnson Yachts-Ships, Inc. ("Northrop") appeals the district court's order dismissing its complaint and compelling arbitration under the New York Convention.  Northrop sued Feadship America, Inc. ("Feadship America") and Royal Van Lent Shipyards, B.V. ("Royal Van Lent") for an allegedly unpaid commission on the construction of a luxury yacht.  The sole question in this appeal is whether Northrop agreed in writing to arbitrate its claims—if it did, then the motion to compel arbitration was properly granted.  Because we conclude that Northrop did agree in writing to arbitrate its claims, we affirm.

I

Northrop is a brokerage company that negotiates deals between buyers and sellers of yachts.  In February 2014, Northrop entered into an agreement with two private clients to sell their current yacht and purchase a new and larger yacht. Shortly thereafter, and at the request of Feadship America (acting as an agent of Royal Van Lent), Northrop introduced the clients to the Feadship America brand and one of its 217-foot yacht models called "Project F809."  The clients soon agreed to purchase Project F809, which would be built by Royal Van Lent.  Two directors from Royal Van Lent, the director of Feadship America, and the CEO and

2

a broker from Northrop negotiated the sale at the Lauderdale Yacht Club in Broward County, Florida.

Because the clients wished eventually to buy a larger yacht than Project F809, Northrop alleges that the "negotiations culminated in a confidential commission agreement for Project F809 on or about May 21, 2015, which specifically contemplated the Clients' purchase of another Royal Van Lent yacht in the future." That understanding was memorialized in a Commission Agreement between Northrop and Royal Van Lent. The Commission Agreement established that:

> [Northrop] is to receive a commission of [€2,000,000] for the sale of [Project] [F]809. If the client will build one new yacht in the future with Royal van Lent Shipyard, [Northrop] is entitled to a minimum additional commission of [€1,200,000] on top of the standard negotiated commission. This additional commission is understood to be a bonus for accepting a reduced commission with project [F]809.

> It is understood by both parties that this commission will be the only commission to be paid by [Royal Van Lent], any other or additional claim for commission will be the sole responsibility of [Northrop]. [Northrop] will use its best efforts during the build and warranty periods to moderate between parties when necessary.

The Commission Agreement also contained an arbitration clause, which provided that "[a]ny dispute arising out of or in connection with this Agreement shall be finally settled in accordance with The Arbitration Rules of the Netherlands Arbitration Institute (NAI)."

3

After Project F809 was delivered to the clients in April 2016, Northrop, Feadship America, and Royal Van Lent continued to discuss the construction of the second contemplated yacht. And Northrop continued to mediate between the clients and Feadship America and Royal Van Lent. For example, at the request of the clients, Northrop recommended other shipyards for the construction of the second yacht. At the same time, Northrop kept Feadship America and Royal Van Lent apprised of the situation in the hopes that they would compete for the project. As late as November 2017, Northrop met with the clients to discuss the potential purchase of a second Royal Van Lent yacht.

Northrop alleges that in January 2018, it learned that the clients had entered into an independent agreement with Royal Van Lent for the construction of a second yacht called "Project F819." According to Northrop, Royal Van Lent and Feadship America "intentionally and surreptitiously excluded Northrop . . . from the negotiations on the deal." Northrop then unsuccessfully sought to recover from Royal Van Lent and Feadship America the commission that Northrop believed it was due for the second yacht project. At some point, Royal Van Lent and Feadship America disclosed the confidential Commission Agreement to the clients, which caused the clients to engage a different broker to sell the first yacht—Project F809. As a result of these events, Northrop alleges, among other things, that it lost

4

out on the "the industry standard commission . . . of 5% of the contracted sales price of Project F819."

Northrop then sued Royal Van Lent and Feadship America for the alleged failure of the defendants to pay Northrop a commission for the construction of the second yacht—Project F819. Northrop brought Florida state-law tort claims against Royal Van Lent for procuring cause (*quantum meruit*) and unjust enrichment. Northrop also brought a Florida state-law claim against Royal Van Lent and Feadship America for tortious interference with an advantageous business relationship.

After removing the case to federal court, Royal Van Lent and Feadship America moved to dismiss and compel arbitration. They argued that the Federal Arbitration Act ("FAA") mandated enforcement of the Commission Agreement's arbitration provision because the provision was governed by the New York Convention ("Convention").[1] Royal Van Lent also argued that the Commission Agreement's arbitration provision covered Northrop's claims and that Feadship

---

[1] "The New York Convention generally requires the courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015). The United States and the Netherlands are signatories to the Convention. And the Federal Arbitration Act vests federal courts with subject-matter jurisdiction over arbitration claims arising under the Convention—including in cases removed from state court. *See* 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."); 9 U.S.C. § 205 (providing for removal of such actions from state courts).

America could invoke the arbitration provision under a theory of equitable estoppel.

Northrop opposed the motion on the grounds that the New York Convention did not apply because the parties did not have an agreement in writing to arbitrate the claims at issue. Specifically, Northrop argued that the Commission Agreement governed only the commission due to Northrop for the sale of the first yacht (Project F809)—and not the commission due for the construction of the second yacht (Project F819), and that the latter formed the basis of the suit. Northrop also argued that its claims arose outside the scope of the arbitration provision. Finally, Northrop argued that Feadship America could not invoke the arbitration provision as a non-signatory to the Commission Agreement.

The district court concluded that the parties agreed to arbitrate the dispute because the Commission Agreement and its arbitration provision governed Northrop's claims. Accordingly, it granted Royal Van Lent and Feadship America's motion to dismiss and compel arbitration under the New York Convention. Northrop timely appealed.

II

Northrop argues that the district court erred in dismissing its complaint and compelling arbitration because the parties did not agree to arbitrate Northrop's

6

claims concerning Project F819.[2]  Northrop contends that there was no agreement to arbitrate for two reasons.  First, Northrop maintains that the Commission Agreement governs only the commission fee for the sale of Project F809—and not the commission fee for the sale of Project F819.  Second, and relatedly, Northrop argues that its claims concern only the commission due on the defendants' sale of Project F819 to the clients.  Therefore, Northrop submits that its claims for commission related to Project F819 fall outside the scope of the Commission Agreement's arbitration provision and the New York Convention does not apply. We address these arguments in order.

To determine whether Northrop should be compelled to arbitrate its claims, we turn first to the applicability of the New York Convention.  "The New York Convention generally requires the courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015).  Section 201 of the FAA provides for the enforcement of the Convention in United States courts.  *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011); *see also* 9 U.S.C. § 201 ("The [Convention] shall be enforced in United States courts in accordance with this chapter.").  For purposes

---

[2] We review *de novo* a district court's grant of a motion to dismiss and compel arbitration.  *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1232 (11th Cir. 2018).

7

of our jurisdiction, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. And defendants may remove "an arbitration agreement or award falling under the Convention" from state to federal court. 9 U.S.C. § 205.

An arbitration agreement falls under the Convention when "four jurisdictional prerequisites are . . . met":

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Bautista v. Star Cruises*, 396 F.3d 1289, 1295, 1295 n.7 (11th Cir. 2005). Northrop does not assert an affirmative defense under the Convention. And Northrop challenges only one of the four jurisdictional elements—whether there exists an agreement in writing to arbitrate this dispute. Accordingly, that question is the focus of this appeal.

In determining whether the parties agreed to arbitrate the dispute within the meaning of the Convention, "FAA principles guide [our] analysis." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("The court is to make this determination by applying the federal substantive law of

8

arbitrability, applicable to any arbitration agreement within the coverage of the Act." (citation and internal quotation marks omitted)). Under the FAA, we apply a "presumption in favor of arbitration[.]" *Princess Cruise Lines, Ltd.*, F.3d at 1214. That presumption is stronger when the Convention is implicated. *See Bautista*, 396 F.3d at 1295 ("[W]e are mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes." (citation and internal quotation marks omitted); *Lindo*, 652 F.3d at 1275("[U]nder the Convention and Supreme Court and Circuit precedent, there is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the field of international commerce."). Thus, we conduct a "very limited inquiry." *Id.* (quotation omitted). Under that inquiry, "[i]n the absence of an affirmative defense, a district court must compel arbitration under the Convention if four jurisdictional requirements are met." *Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016).

Northrop does not dispute that the Commission Agreement set forth the terms of Northrop's commission for the sale of Project F809. And Northrop does not dispute that the arbitration provision would govern "[a]ny dispute arising out of or in connection with" the sale of Project F809. The question we must answer is

whether the parties agreed in writing to arbitrate this dispute arising from the sale of Project F819.

First we consider whether the Commission Agreement governs the second yacht—Project F819.  It plainly does.  To begin, the Commission Agreement expressly contemplates Project F819.  In addition to providing that Northrop was "to receive a commission of [€2,000,000] for the sale of [Project F809,]" the Commission Agreement provided that "[i]f the client will build one new yacht in the future with Royal van Lent Shipyard, [Northrop] is entitled to a minimum additional commission of [€1,200,000] . . . on top of the standard negotiated commission."  As Northrop's complaint acknowledges, the Project F809 "negotiations culminated in a confidential commission agreement . . . which specifically contemplated the Clients' purchase of another Royal Van Lent yacht in the future."  And Northrop does not dispute that Project F819 is the "one new yacht in the future" referenced in the Commission Agreement.  Thus, the Commission Agreement—and its arbitration provision—governs both yachts.

Northrop argues that the Commission Agreement's reference to "one new yacht in the future" was merely an "aspirational goal" and that the sole purpose of the Commission Agreement was to create a two-part payment structure for the sale of Project F809.  Northrop also maintains that the Commission Agreement did not govern Project F819 because the phrase "on top of the standard negotiated

commission" meant that the parties would engage in future negotiations. We are not persuaded by these arguments.

We take Northrop's complaint at its own word that the Commission Agreement "specifically contemplated the Clients' purchase of another Royal Van Lent yacht in the future." And the two-part payment structure of the Commission Agreement confirms that understanding. Under that structure, Northrop would receive a "bonus" of a specified amount for the construction of a second yacht because Northrop accepted a "reduced commission" for the construction of the first yacht. Although it is true that the Commission Agreement speaks of a "standard negotiated commission" on the second yacht, Northrop's complaint fails to allege that the parties would have negotiated the commission on Project F819. To the contrary, Northrop's complaint affirmatively asserts that it is "entitled" to the industry standard of "5% of the sales price for Project F819."

Next, we consider whether Northrop's claims fall within the scope of the Commission Agreement's arbitration provision. They do. The arbitration provision states that "[a]ny dispute arising out of or in connection with this Agreement shall be finally settled in accordance with The Arbitration Rules of the Netherlands Arbitration Institute (NAI)." We have consistently held that such language is broad in scope. *See, e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (holding that a provision that covered "all disputes

11

arising out of or in connection with" an agreement was "clearly meant to be read broadly"); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996). There is no doubt that the arbitration provision covers Northrop's claims. Specifically, Northrop's *quantum merit* and unjust enrichment claims concern allegedly unpaid commission for the sale of Project F819, and the Commission Agreement governed the commissions due to Northrop. Thus, Northrop's *quantum meruit* and unjust enrichment claims go to the heart of the agreement between the parties. Similarly, Northrop's claim that the defendants tortiously interfered by disclosing the terms of the Commission Agreement to the clients falls squarely within the scope of the arbitration provision. The Commission Agreement provided that "[b]oth parties will keep this agreement strictly confidential as well as the final sales price of the yacht." And Northrop alleges that the defendants tortiously interfered by disclosing the terms of the Commission Agreement to the clients.[3]

In short, the Commission Agreement governs Project F809 and Project F819, so the arbitration provision applies to both projects. And Northrop's claims

---

[3] Even if there were some doubt about the scope of an arbitration provision, under the FAA, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)).

fall within the scope of the arbitration provision.[4]  Accordingly, the parties agreed in writing to arbitrate Northrop's claims, and Northrop cannot avoid the express terms of the agreement it signed by bringing equitable tort claims rather than breach of contract claims.  *McBro Plan. & Dev. Co. v. Triangle Elec. Const. Co.*, 741 F.2d 342, 344 (11th Cir. 1984), *abrogated on other grounds by Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011) ("[I]t is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.").  Accordingly, the district court did not err in compelling arbitration under the Convention.

**AFFIRMED.**

---

[4] Northrop argues that the district court erred when it allowed Feadship America to invoke the arbitration provision because it was not a signatory to the Commission Agreement.  A party who is a non-signatory to an arbitration agreement may nevertheless compel arbitration under the doctrine of equitable estoppel in two circumstances: (1) "when the plaintiff-signatory must rely on the terms of the written agreement in asserting its claims," or (2) "when the plaintiff-signatory alleges substantially interdependent and concerted misconduct by the signatories and non-signatories, and such alleged misconduct is founded in or intimately connected with the obligations of the underlying agreement[.]" *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1118–19 (11th Cir. 2020) (cleaned up); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1642 (2020) (holding that the New York Convention does not prohibit the application of domestic equitable estoppel doctrines).  Here, Feadship America may invoke the Commission Agreement's arbitration provision under the second theory of equitable estoppel.  Northrop alleged that "Royal Van Lent and Feadship America intentionally and unjustifiably interfered with the business relationship [between] Northrop . . . and its Clients by unilaterally disclosing the confidential commission agreement for Project F809[.]"  Thus, Northrop's tortious interference claim alleges interdependent and concerted misconduct between Royal Van Lent and Feadship America that violated express obligations in the Commission Agreement.